No. 18,244.

CLYDE HAROLD ARTZ *v.* ELOY HERRERA.
(325 P. [2d] 927)

Decided May 19, 1958.   Rehearing denied June 9, 1958.

Messrs. WORMWOOD, O'DELL & WOLVINGTON, Mr. JOSEPH L. MORRATO, Mr. GEORGE C. POMAINVILLE, for plaintiff in error.

Messrs. RINN & CONNELL, Mr. W. E. McCARTHY, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE parties appear herein in reverse order from their position in the trial court. We shall refer to plaintiff in error as defendant and to defendant in error as plaintiff.

Plaintiff brought this action to recover damages for personal injuries received in a collision between an automobile being driven by plaintiff and a pickup truck being driven by defendant.

The collision occurred at about 7:35 P.M. on August 7, 1955, on an unsurfaced nineteen-foot wide country road near Lafayette, Colorado. The uncontradicted evidence shows plaintiff was travelling south, the defendant north; a short distance to the north of the point of the collision there was a gradual rise in the road and plaintiff first observed the defendant's approach as he came over this rise. The defendant observed the cloud of dust being kicked up by plaintiff before coming over the rise and observed plaintiff's car as he, defendant, came over the rise. Prior to seeing each other, plaintiff had been driving at about thirty-five miles per hour. The defendant, according to his own testimony, was going about twenty-five miles per hour. According to one of his witnesses riding in the pickup with him, he was going thirty-five miles per hour.

The evidence is conflicting on most essential points. The plaintiff testified that the defendant had his bright lights on and they blinded plaintiff. Defendant testified his lights were on "dim," but a passenger in defendant's pickup, who appeared as a witness for defendant, had signed a statement, properly admitted in evidence, that:

"Our lights were high. Herrera honked his horn and flicked his lights. We kept our lights bright and then came the crash."

The cars sideswiped each other. Plaintiff testified that he was on his side of the road at all times, that he

had dimmed his lights and had blinked his lights on and off and had honked his horn to induce defendant to dim, which he never did. Defendant testified that plaintiff crossed over to defendant's side of the road and that defendant, to avoid being hit, pulled over to within six inches of his side of the road and that he was hit while in that position, defendant having brought his pickup to a virtual stop prior to the collision.

Plaintiff was badly injured and was removed from the scene of the accident at once. His car came to rest about three hundred feet from the assumed point of collision, and it was then on the wrong side of the road. Within twenty minutes of the time of the accident, two patrol officers arrived at the scene of the collision. Before the patrol officers arrived, defendant's car had been turned around and parked immediately behind plaintiff's car. Defendant claimed his car was not moved after the collision and was corroborated in this by his passenger. The patrol's version of this disputed point is strongly corroborated by pictures taken at the time, showing both cars headed south and the pickup immediately behind the plaintiff's car. Defendant testified plaintiff's car made skid marks for one hundred to one hundred and fifty feet before the point of impact; both patrolmen testified there were no skid marks of either vehicle and they could not fix the point of impact as in the west or east lane. The patrol officers may have been hampered in finding skid marks, point of impact, tread marks, etc., by reason of a shower which followed the accident and preceded their arrival.

On this conflicting evidence the jury found the issues in favor of the plaintiff.

After the case was submitted to the jury, defendant moved for a mistrial because of alleged improper and inflamatory remarks made in argument to the jury by one of plaintiff's attorneys, and in support of this motion defendant's attorney dictated into the record his version of the improper remarks. The court reporter did not

make a record of the arguments and alleged improprieties. Plaintiff's counsel did not, before the trial court, admit or deny the correctness of this dictated statement, but in their brief here they deny much of it. The trial court denied the motion and stated as reason therefor that counsel had not objected at the time the argument was made and had in fact answered the same in his argument to the jury and therefore had waived any objection to the matter.

The defendant moved for dismissal at the close of plaintiff's case and for a directed verdict at the close of all the evidence, urged the same matters in his motions for new trial and mistrial, and presents the same reasons here for reversal.

As we have observed, the essential facts are disputed. Plaintiff's evidence shows defendant did not dim his lights; defendant says he did; one of defendant's witnesses had signed a statement that he did not dim his lights, but kept them bright. This matter was for the jury. Each party testified he was on his own side of the road; neither is corroborated by any physical facts or surrounding circumstances. This question was for the jury.

Defendant's main contention is that according to plaintiff's own testimony he became blinded by defendant's headlights when about one city block from defendant, and continued to drive ahead though blinded, and therefore cannot recover because of the rule that one is supposed to drive at such speed and with his car under such control that he can stop within the distance that objects are visible. Counsel refer to: *Ridenour v. Diffee,* 133 Colo. 467, 297 P. (2d) 280, in which we held a defendant who made a left turn at a street intersection and struck pedestrians on the crosswalk was guilty of negligence as a matter of law; *Aaron v. Wesebaum,* 114 Colo. 61, 162 P. (2d) 232, an intersection case where plaintiff was held guilty of negligence as a matter of law in failing to look and see a plainly visible car ap-

proaching from his right and to stop; *Patch v. Boman,* 127 Colo. 424, 257 P. (2d) 418, a case in which the driver of an automobile was held negligent as a matter of law in driving into an intersection when his visibility was cut off by snow on his windshield. Another case of similar tenor decided by this court subsequent to filing of briefs herein is *Union Pacific Railroad Company v. Cogburn,* 136 Colo. 184, 315 P. (2d) 209, wherein the plaintiff was held negligent as a matter of law in failing to see and in driving into a plainly visible, brightly painted, gondola car standing on and blocking a highway crossing.

None of these cases is comparable to the case before us. In each of the above cases the driver failed to drive his car at such rate of speed and so under control that he could stop within the assured clear distance ahead. In the case before us it might be that plaintiff could have easily stopped within the distance where defendant's automobile first became visible ahead, but a very different situation arises where defendant was approaching plaintiff at a speed variously testified to as being twenty to thirty-five miles per hour; defendant in approaching plaintiff was continuously and rapidly shortening the distance between the two cars. The rule that one must drive at such speed as to be able to stop within the distance that objects ahead are visible can have no application to approaching objects whether the object be a car with blinding lights, a deer or a pheasant. If plaintiff had come to a complete stop in the portion of the road where he claims he was hit, he still would have been hit, unless the defendant had also stopped or remained on his own side of the road.

The plaintiff had a right to assume and to continue to assume that the defendant would make a lawful use of the highway — drive on his own side of the road and dim his lights when approaching an oncoming car, as provided by law. He had the right to continue to assume that the defendant would dim his lights.

The plaintiff was obligated at all times to act with reasonable care and prudence under the circumstances. Plaintiff's evidence shows that he was driving about thirty-five miles per hour on his side of the road, his lights on bright until he saws the reflections of defendant's lights as he approached the rise in the road, then plaintiff dimmed his lights and, on being confronted with defendant's bright lights and being blinded thereby, he took his foot off the gas, blinked his bright lights on and off, applied his brakes, blew his horn, and remained on his own side of the road. Certainly, if the jury believed this evidence, and it was for the jury to pass upon, it is difficult to see wherein plaintiff was negligent or failed to act as a reasonably prudent person would act under the circumstances. Clearly the questions of negligence, contributory negligence and proximate cause were all disputed questions of fact for the jury to determine.

Defendant assigns as error the court's refusal to give tendered Instruction No. 6, which is as follows:

"When cars meet at night, each driver must anticipate the possibility of interference with his vision by the headlights of the approaching car, and, if he cannot see the road beyond such car, must have his own automobile under such control which will enable him to stop immediately, or within such distance as he can at all times see ahead."

■ Though a driver may be under a duty to anticipate *lawful interference* of his vision by *lawful headlights,* he his not obligated to anticipate *unlawful interference* with his vision by *unlawful headlights.* As pointed out above, there is no duty on the part of a driver to have his automobile under such control as will enable him to stop *immediately* or within such distance as he can see ahead in order to avoid striking, or being struck by an oncoming car approaching in the wrong lane. The trial judge properly refused to give the tendered instruction.

Defendant also tendered Instruction No. 7:

"In case of a collision between vehicles, a presumption of negligence arises against the driver who was on the wrong side of the road at the time of the collision."

The trial court refused to give the instruction, and this is assigned as error.

This tendered instruction was given and approved by this court in *Larson v. Long,* 74 Colo. 152, 219 Pac. 1066, wherein it is said:

"While it is true that such presumption is *prima facie* only, the court did not say to the jury that it was a conclusive presumption, and the plaintiff should have asked for a modification. As said by this court, in *Cooper v. Woodward,* 71 Colo. 90, 204 Pac. 336: 'If any points were omitted counsel for defendant should have made the proper requests.' "

The facts in this case do not warrant the giving of such instruction without qualification. The presumption of negligence is not conclusive and might well be overcome by proof that the plaintiff, by reason of defendant's unlawful conduct, was blinded and took all reasonable steps to slow or stop his car in his own lane of traffic and, though unsuccessful in his efforts due to defendant's negligence, was not answerable for being on the wrong side of the road. Other instructions given properly advised the jury of a driver's duty to drive on the right half of the roadway.

■ Defendant contends that it was error to refuse to grant a mistrial because of prejudicial conduct of one of plaintiff's counsel in arguing to the jury. Unfortunately, the reporter did not take down the argument and we have only the statement of defendant's counsel dictated into the record outlining his views as to what objectionable words were spoken. Opposing counsel now say in their brief that much of the dictated statement does not conform to the actual happenings. The record being in such condition, we are unable to say that the trial court's refusal to grant a mistrial was reversible error. The trial judge heard the argument; it was his

duty, even though no objections were made, to confine the argument to matters in evidence and within reasonable bounds. He took no steps to restrain counsel, so we must assume he observed nothing objectionable. Defendant's counsel heard the argument and made no objection during the argument and in turn undertook to make answer thereto. It was only after the jury had retired to consider its verdict that counsel sought a mistrial order. We find no basis in the record to hold that the refusal of the trial court to grant a mistrial was reversible error. *Spears Clinic v. Maier,* 128 Colo. 263, 261 P. (2d) 489; *Weicker Co. v. Bedwell,* 95 Colo. 280, 35 P. (2d) 1022.

Perceiving no error in the record, the judgment is affirmed.