## No. 16,907.

### SPEARS FREE CLINIC AND HOSPITAL FOR POOR CHILDREN
### *v.* MAIER.
(261 P. [2d] 489)

Decided September 21, 1953.

Mr. CHARLES GINSBERG, Mr. GEORGE LOUIS CREAMER, for plaintiff in error.

Messrs. VAN CISE & VAN CISE, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE STONE delivered the opinion of the court.

PLAINTIFF, Spears Free Clinic and Hospital for Poor Children, is a Colorado corporation not for profit, which operates a chiropractic clinic known as Spears Clinic, and a chiropractic sanitarium known as Spears Sanitarium. Defendant Maier is a physician. One Susia A. Bowers was received as a patient in the Spears Sanitarium on May 28, 1946, and remained there until the evening of June 3, 1946, when she was removed to a hospital where she was under the care of defendant. The day after such removal surgery was performed on her, following which she died. On June 7, 1946, the day of her death, defendant made out and signed a death certificate, and, upon the bottom margin thereof, wrote: "This patient died from criminal neglect at Spears Sanitarium. Dr. Maier." More than three years thereafter, on December 3, 1949, in an article in a Denver newspaper, a portion of said death certificate containing defendant's above-mentioned statement was photostated, following affirmation of the truth of said statement by defendant to a reporter of said newspaper. Thereafter, on January 14, 1950, this action for libel was brought against defendant.

In the amended complaint, in a so-called first cause of action, it was alleged that defendant signed and placed of public record the death certificate and personally wrote across the bottom thereof the words, "This patient died from criminal neglect at Spears Sanitarium," and that said certificate has continually since reposed in the records of the Department of Health of the State of Colorado with said words inscribed upon it, open to public inspection, and has been continuously inspected, seen and viewed and said words "have been continually and continuously published from and since the said date and are now being so published."

For a so-called second cause of action, plaintiff alleged that the defendant on December 3, 1949, caused to be published in a newspaper a photostatic copy of the death certificate, including said marginal statement, and that defendant then further stated to said newspaper that Susia A. Bowers died after having "laid several days no care" at Spears Sanitarium, and caused said statement to be published, and that said statement was false.

Defendant, in answer to the first count of the complaint, pleaded, inter alia, the statute of limitations providing that actions for libel shall be commenced within one year next after the cause of action shall accrue, and not afterwards. In answer to the second count, he admitted the signing of the death certificate and denied the other essential allegations.

Defendant moved to dismiss the first count of plaintiff's complaint on the ground that it failed to state a claim upon which relief could be granted, and upon hearing subsequent to answer wherein the statute of limitations was pleaded, the motion was sustained and judgment entered upon the pleadings for dismissal of said count. The case came on for trial to a jury on the remaining count, where verdict and judgment were in favor of defendant, and plaintiff here seeks reversal.

The first stated ground for reversal is that the court erred in granting defendant's motion to dismiss

the first count of the complaint. Several challenging legal propositions are argued in the briefs; but, in view of our conclusion, we think we need now consider only that based on the statute of limitations. It is not disputed that each publication of a libel is a separate cause of action. Being such, each should be separately pleaded. *Lininger v. Knight,* 123 Colo. 213, 226 P.(2d) 809. Cause or right of action accrues on the date of publication. Plaintiff's amended complaint was filed pursuant to an order of the court requiring it to state, as a separate cause of action, in separate counts each and every act of alleged libel, together with the dates thereof. No special damage was alleged, and plaintiff's case rests on libel per se. The count which was stricken contained a specific allegation only as to one act of libel, to wit, that of placing of public record the death certificate with the libelous words across the bottom, and one specific date thereof, to wit, June 7, 1946, which was more than three and a half years prior to the commencement of the action. Under our statute of limitations, action is barred if not commenced within one year "next after the cause of action shall accrue." Section 2, chapter 102, '35 C.S.A.

Even if we were to ignore the order for separate statement and search the pleading of that count for allegation of other causes of action within the period of limitation, we find therein no allegation nor contention that defendant subsequently made or distributed copies of said death certificate or of his marginal statement thereon; rather, the contention is that the certificate itself so deposited in the files of the Registrar of Vital Statistics was open to public inspection and had been "continuously" inspected, and thereby it was "continuously published."

██ Such is not the law. The fact that many people read a libel is evidence as to the extent of damage therefrom, but does not in itself establish publication as to each reader. So to urge is to confuse the result of libel with the act of libel. A letter is published as soon as

posted, and in the place where it is posted, if it is ever opened anywhere by any person other than the person to whom it is addressed. *Odgers on Libel and Slander,* (5th ed), page 162. It is only the redelivery or rereading or other repetition of the libelous statement to others by further and voluntary act of defendant that constitutes republication by him. Anno. 1 ALR 2d 384, et seq. It is not here urged that defendant made republication in any such manner until the occurrences of 1949, and these occurrences were set out in the second count of the complaint and the issue raised by them was not stricken. Plaintiff's novel "theory of continuous publication" as here urged would apply equally to any published or written statement continuing of record or in the hands of others, and to hold that the possibility or likelihood of its being read from time to time by other people would constitute "continuing publication" would effectively nullify the statute of limitations.

Plaintiff cites authority to the effect that one is responsible for repetition or other publication by others under his authority or as the natural and probable consequence of his own publication. So admitting, there is no allegation in the stricken count or elsewhere in the complaint of any such repetition or republication by others within the period of the statute of limitations, or at all, and, had there been such allegations, they should have been set out as separate causes of action in separate counts of the complaint. There was no error in sustaining defendant's motion to dismiss the first count of the complaint after the statute of limitations had been pleaded thereto.

█ █ It next is urged that "The court erred in permitting before the jury testimony of doctors of medicine," since chiropractors are to be judged only by the standards of their own profession. Admitting the latter proposition, the former does not follow. A doctor of medicine is not ipso facto an incompetent witness as to any fact simply because the case involves compliance

with the standards of chiropractic, especially where a judgment of $300,000 is being sought against the witness. The question involved is not that of the competency of the witness, but that of the competency of the evidence sought to be introduced through him. Here plaintiff has not set out in its brief, as required by the rule, a single question or answer which is challenged as objectionable on the ground that the witness was a doctor of medicine, nor a ruling of the court thereon. It is the duty of counsel to point out in their briefs the specific errors of which they complain; however, upon reading of the record here, we find part of the testimony as to medical standards was elicited by plaintiff's own counsel, and the remainder was given without objection, except in one case where a physician witness was interrogated as to whether he remembered the case of Susia A. Bowers, and objection was made "to this witness testifying to anything about Susia A. Bowers or her case or her condition." Patently such objection was properly overruled.

Notwithstanding the failure to object to any such testimony, the trial court carefully protected plaintiff by instructing the jury to the effect that the propriety of any act or proceeding of a practitioner of any one of the healing arts in the treatment of his patient is to be judged by the standard of practice and by the principles, tenets and beliefs of the school of the healing arts to which he belongs, and by no other. No error appears in permitting the testimony of doctors of medicine.

■ Again, it is contended that the court erred in the giving of certain instructions. Only one of the instructions objected to is set out in the briefs. In itself it was proper, and no objection is shown to have been made to the giving of it or the giving of any instruction. On the contrary, it appears from the record that when the court tendered to counsel for plaintiff instructions proposed to be given, plaintiff's counsel stated, "I have no exceptions and no tenders." Asserted error in instructions must be

specifically pointed out both to the trial court and to this court. Here neither appears.

■ Finally, it is urged that "the court permitted improper latitude of argument to the counsel for the defendant, in closing argument." Insofar as allegedly objectionable argument is pointed out to us in the brief, it does not support the objection now made to it, and it does not appear that any objections were made to it in the trial court. We may well say, in the words of President Judge Thomson, in *Adams Express Co. v. Aldridge,* 20 Colo. App. 74, 77 Pac. 6: "Wide latitude is allowed an attorney in advocating his client's cause, and we are not prepared to say that by the language quoted, the bounds of propriety were overstepped. * * * But whatever might be said regarding the propriety of the remarks attributed to the counsel, there was no objection interposed to them at the time they were made, nor was any instruction requested concerning them; and, therefore, even if they might be the subject of censure, the defendant would not be entitled to a consideration here of the question respecting them which is now raised."

The judgment is affirmed.