EDWARD MEDEIROS, Plaintiff-Appellant, *v.* RALPH KONDO, Defendant-Appellee.

NO. 5475

MAY 30, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI, OGATA AND MENOR, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

This appeal arises out of an order granting motion to dismiss or for judgment on the pleadings. Appellant

Medeiros, a civil service employee of the State Department of Taxation filed an action for damages against appellee Kondo, the Director of the State Department of Taxation. The substance of plaintiff's allegation was that:

3. Some time prior to January 7, 1971, defendant, knowing he had no just cause therefor, determined to force plaintiff to either resign, retire or accept a demotion, in order to replace him in his position with some other person chosen by defendant, that to accomplish this end defendant, using his official capacity, maliciously and willfully and with the intention of harassing plaintiff and causing him mental distress, humiliation, suffering, and embarrassment, engaged in the following acts among others;

A. At several meetings with plaintiff threatened him with being fired, demoted or transferred unless he would agree to accept early retirement or a demotion;

B. Caused the Attorney General's office to send investigators to Kauai to question and harass plaintiff, his friends, his relatives, his acquaintances and his fellow employees;

C. Filed charges with the State Ethics Commission which he knew were groundless or constituted minor technical problems only in an effort to humiliate plaintiff and to cause him legal expense;

D. Contrary to the provisions of Regulation X of the State Personnel Manual, Subpart A, willfully and intentionally and despite numerous requests by plaintiff and by the ombudsman, failed and refused to provide plaintiff with his job performance report for the period ending June 30, 1971.

In granting the motion to dismiss or for judgment on the pleadings, the court below held in effect that the defendant, by virtue of his high government office, is absolutely immune to a suit for damages arising out of the performance of his public function. To the extent that absolute immunity from tort suit for nonjudicial officers may have been the law in

Hawaii we now hold otherwise.[1]

Perhaps the best statement of the immunity problem is by Judge Learned Hand.

> It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied*, 339 U.S. 947 (1950).

Although we agree with Judge Hand's conception of the problem we disagree with his conclusion of complete immunity. In the balancing process the scales need not tip in favor of one interest or the other. It is sometimes possible to fashion a remedy that provides relief to both interests.[2] Although the

---

[1] Leong Yau v. Carden, 23 Haw. 362 (1916), has been cited as standing both for and against immunity for government officials. The case is unclear in that it discusses immunity for a public prosecuting officer yet holds the officer to answer to a complaint alleging malicious prosecution without probable cause. The question of immunity for judicial officers was laid to rest in State v. Taylor, 49 Haw. 624, 631, 425 P.2d 1014 (1967).

[2] *Cf.*, THE HOLY BIBLE, 1 Kings, ch. 3, verses 16-28.

federal courts have opted for tipping the scales in favor of absolute immunity for federal officers,[3] a majority of state courts have attempted to find a middle ground at least in regard to inferior state officers.[4]

"The considerable majority of the state courts take the position that there is no immunity where the inferior officer does not act honestly and in good faith, but maliciously, or for an improper purpose."[5]

California is one state that has adopted the absolute immunity rule which appellee urges upon us.[6] However even California has on occasion held public officers to answer for allegations of malicious injury. In *Lipman v. Brisbane Elementary School,* 55 Cal. 2d 224, 359 P.2d 465, 11 Cal. Rptr. 97 (1961), the California Supreme Court found certain defamatory remarks to be outside the scope of authority and not protected by the immunity doctrine. The California court was unwilling in *Lipman* to go as far as the Supreme Court had gone in *Barr v. Mateo, supra,* which held the Director of the Office of Rent Stabilization to be immune to an action for malicious libel.[7]

To aid our analysis in fashioning a remedy which truly balances the conflicting interests, we must return to Judge Hand's characterization of the problem.

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon

---

[3] Gregoire v. Biddle, *supra;* Barr v. Matteo, 360 U.S. 564 (1959); S & S Logging Co. v. Barker, 366 F.2d 617 (9th Cir. 1966). Federal courts have been reluctant to extend this immunity to state officers sued in federal court, especially in actions wrought under 42 U.S.C. § 1983. *See,* Scheuer v. Rhodes, 42 U.S.L.W. 4543 (April 17, 1974).

[4] Vickers v. Motte, 109 Ga. App. 615, 137 S.E.2d 77 (1964); Tillotson v. Fair, 160 Kan. 81, 159 P.2d 471 (1945); Schwartz v. Heffernan, 304 N.Y. 474, 109 N.E.2d 68 (1952).

[5] W. PROSSER, LAW OF TORTS 989 (4th ed. 1971) (citations omitted).

[6] Hardy v. Vial, 48 Cal. 2d 577, 311 P.2d 494 (1957); White v. Towers, 37 Cal. 2d 727, 235 P.2d 209 (1951).

[7] See Note, 49 CAL. L. REV. 772, 776 (1961):
"By restricting the scope of an official's authority the California court has chosen one way to mitigate the harsh effects of the immunity rule."

others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. *Gregoire v. Biddle, supra* at 581.

We feel strongly that if an official in exercising his authority is motivated by malice, and not by an otherwise proper purpose, then he should not escape liability for the injuries he causes. To reach that end we view the problem as one of limited liability and not immunity from the action itself. It is not possible in practice to confine such actions to the guilty. A finding of liability however can be confined to the guilty. The key to our analysis may be found in Judge Hand's statement that "it is impossible to know whether the claim is well founded until the case has been tried, *and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all . . . ." Gregoire v. Biddle, supra* at 581 (emphasis added).

In discussing this very passage by Judge Hand, Professors Harper and James have commented that:

The case for conditional privilege is often rested on arguments that assume the presence of malice in the individual case, and so fail to meet Judge Hand's point cleanly; yet perhaps they suggest a flaw in it in spite of that. Where the charge is one of honest mistake we exempt the officer because we deem that an *actual holding of liability* would have worse consequences than *the possibility of an actual mistake* (which under the circumstances we are willing to condone). But it is stretching the argument pretty far to say that the *mere inquiry into malice* would have worse consequences than the *possibility of actual*

504

*malice* (which we would not, for a minute, condone). . . .[8]

We are unwilling to deny plaintiffs a "mere inquiry into malice." This court has a strong preference for allowing all litigants their day in court.[9] In balancing the mere inquiry into malice against the possibility of actual malice we find that the burden of a trial is outweighed by plaintiff's right to be heard on the merits of his case. We do not feel that the possible burden of a trial would discourage good men and women from public service. We are concerned however with what Judge Hand terms "the inevitable danger of its outcome." The burden of a trial is mere inconvenience. The inevitable danger of its outcome, the possibility of an actual holding of liability against an innocent official is the real crux of the matter. It is indeed the possible liability and not the possible trial that will deter good people from government service. There can be no doubt then that the public interest requires adequate protection for the innocent public servant's pocketbook. We reject the federal rule of absolute immunity as a method of balancing the conflicting interests. What we seek is a compromise which will allow the injured party to be heard yet protect the innocent public servant's pocketbook.

To effect this compromise of competing and conflicting interests we do not turn to fictions of ministerial functions, quasi-judicial functions, inferior public officers, scope or color of authority as a majority of courts have done. In other contexts where courts have been faced with the problem of reconciling conflicting policy interests which arise out of exposure to litigation, the creative response has been to reach an intermediate solution based on standards of proof rather than a solution favoring, in absolute terms, one such interest over others.[10]

We hold that the best way to balance the interests of the maliciously injured party against the innocent official is to allow the action to proceed but to limit liability to only the

[8] 2 F. HARPER & F. JAMES, THE LAW OF TORTS § 29.10 at 1645 (1956) (footnotes omitted).

[9] *See, e.g.,* Leong v. Takasaki, 55 Haw. 398, 520 P.2d 758 (1974).

[10] *See, e.g.,* Note, 86 HARV. L. REV. 715, 725, 729 (1973).

most guilty of officials by holding plaintiff to a higher standard of proof than in a normal tort case. To this end we allocate to plaintiff the burden of adducing clear and convincing proof that defendant was motivated by malice and not by an otherwise proper purpose.

We feel that the compromise of allowing plaintiff his day in court, albeit with a high burden of proof, and its attendant burden of trial on innocent defendants is preferable to a rule of immunity which history has shown to be unjust. Absolute immunity is a rule that is no longer tenable in a society as complex as ours where we have seen burglary, eavesdropping, bribery and perjury under color of authority.

Reversed and remanded.

*Frank D. Padgett (Padgett Greeley Marumoto & Steiner* of counsel) for plaintiff-appellant.

*Nelson S. W. Chang* and *James E. Ross,* Deputy Attorneys General *(George Pai,* Attorney General, with them on the brief) for defendant-appellee.