ARTHUR A. HOKE, JR. and HELEN P. HOKE, Plaintiffs-Appellants *v.* GUY A. PAUL, Chief of Police of the County of Hawaii, COUNTY OF HAWAII, a municipal corporation, and JOHN DOES 1 through 10, Defendants-Appellees

NO. 8023

(CIVIL NO. 5064)

NOVEMBER 16, 1982

RICHARDSON, C.J., LUM, NAKAMURA, PADGETT AND HAYASHI, JJ.

OPINION OF THE COURT BY PADGETT, J.

This is an appeal from the granting of a summary judgment in favor of Appellees Guy A. Paul (Paul) and the County of Hawaii

(County). We affirm as to Appellee County of Hawaii and reverse as to Appellee Paul.

The second amended complaint, with respect to which the summary judgment was granted, contained two counts. Count I was essentially an action in defamation concerning two documents prepared and allegedly published by Paul. Count II encompassed not only the two publications in question, but a series of acts commencing some 18 or 19 years earlier and allegedly continuing until the date of the filing of the second amended complaint. It sounded in what can best be described as malicious official harassment of Appellant Arthur A. Hoke, Jr. (Hoke) by Paul through the use of his position as Assistant Chief and later Chief of Police of the County of Hawaii. Appellant Helen P. Hoke (Helen Hoke), wife of Hoke claimed damages under both counts for loss of consortium. Extensive affidavits and other exhibits were filed on both sides with respect to the motion for summary judgment which, thereafter, was granted by the court below.

## I.   THE COUNTY OF HAWAII

Appellants alleged, with respect to Paul's actions which are the claimed bases of liability under both counts, that those actions were taken in the course and scope of his employment.

As to Count I, defamation, the law is that an employer may be liable for compensatory damages for the defamatory acts of an employee if the employee was acting within the scope and course of his employment. *Kahanamoku v. Advertiser*, 26 Haw. 500 (1922); 50 AM. JUR.2d, LIBEL AND SLANDER § 163 (1970). However, the affidavits filed by appellants in opposition to the motion for summary judgment make clear that their contention is that Paul, in doing the specific acts complained of, was acting contrary to procedures laid down in the general orders of the police department of the County of Hawaii and the collective bargaining contract between the County and the representative of the police officers, SHOPO. Appellants have therefore, insofar as the County of Hawaii goes, conceded that Paul was not acting within the scope and course of his duties as an employee of the County in publishing the two allegedly defamatory statements. Hence, summary judgment was properly granted on Count I in favor of the County.

As to Count II, it is an action for harassment of another by a public official in the use of his official position arising out of subjective, intentional malice. Such an action clearly lies only against him personally and not his employer; compare, *Medeiros v. Kondo,* 55 Haw. 499, 522 P.2d 1269 (1974); *Runnels v. Okamoto,* 56 Haw. 1, 525 P.2d 1125 (1974). Count II, therefore, fails to state a claim for relief against the County.

## II.   THE LIABILITY OF APPELLEE PAUL UNDER COUNT I

### A. *The Standard of Malice*

The two documents complained of are (1) a memorandum from Appellee Paul to the then Chief of Police of the County of Hawaii, Ernest J. Fergerstrom, dated July 22, 1975 authored by Appellee Paul and (2) a misconduct report prepared by Appellee Paul and signed by him as the investigator, receipt of a copy of which was acknowledged by Appellant Arthur A. Hoke, Jr., in December of 1975.

Appellee contends that the "malice" standard adopted in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L. Ed.2d 686 (1964) and followed by us in *Tagawa v. Maui Publishing Co., Ltd.,* 50 Haw. 648, 448 P.2d 337 (1968) and *Rodriguez v. Nishiki,* No. 7956 (decided November 10, 1982) is applicable. Under that standard, where the defamee is a public official or figure, the defamor is not liable, even though the publication be false, unless he knew that it was false or unless he published it with reckless disregard of whether or not it was false.

On the other hand, appellants contends that the standard should be that adopted recently by us in *Towse v. State,* 64 Haw. 624, 647 P.2d 696 (1982), to wit, that where a defamor is a public official, he is held to the standard of a reasonable man in determining whether his publication is or is not false but where the defamee is also employed by the government, he or she must prove that the defamor acted with intentional, subjective malice by clear and convincing evidence, under the rule set forth in *Medeiros, supra.*

We think that insofar as any claim sounding in defamation goes, it may be that the appellants in *Towse, supra,* although public employees, were not public "officials" (or public figures) (see *New York Times Co. v. Sullivan, supra* at 376 U.S. 283, n.23. In our case, on the

other hand, Appellant Hoke was a Captain of Police, a highly visible "public official", and therefore, the *New York Times'* standard should apply.

That standard, however, does not save summary judgment on Count I in this case, since the evidence submitted by the appellants in opposition to the motion for summary judgment is sufficient to create a genuine issue of material fact as to whether or not Paul acted with knowledge of the alleged falsity of his statements or in reckless disregard thereof. For example, there is sufficient evidence of such clarity and convincing force that a reasonable trier of the fact, who believed it, could conclude that many of the charges of misconduct as a police officer and captain, leveled in the documents in question against Hoke by Paul concerned conduct of Hoke which was authorized by his superior and known to be so authorized by Paul, who, nevertheless, leveled the charges in disregard of that authorization.

### B. *The Statute of Limitations*

Defamation actions are governed by § 657-4, HRS, which provides,

> All actions for libel or slander shall be commenced within two years after the cause of action accrued, and not after.

The original complaint in this case was not filed until January 23, 1978, thus, it was filed more than two years after the date of Exhibit A (attached to the complaint) and more than two years after Appellant Hoke had received Exhibit B (attached to the complaint).

With respect to Exhibit A (the memorandum of July 22, 1975), appellants argue that they did not know of the existence of that document until May of 1976 when it was discovered in the course of the grievance procedure which eventually cleared Hoke of all of the charges leveled against him in the two documents by Paul.[1] As to Exhibit B, Hoke claims he did not know of its publication to the so-called second disciplinary board until he was called before that

---

[1] At oral argument, Paul's counsel referred to the transcript of an interview between Paul and Hoke, which referred to a "Misconduct Report", and indicated to the court that that report and Exhibit A were one and the same. Since the interview was dated July 15, 1975 and Exhibit A, July 22, 1975, it is obvious that such was not the case.

board on January 23, 1976.[2]

Appellee argues that the statute of limitations with respect to defamation actions begins to run when the publication occurs, regardless of when it is discovered. *See* 50 AM. JUR.2d, LIBEL AND SLANDER § 390 at 912 (1970) and the cases cited in footnote 16 thereto.

Appellants, on the other hand, contend that under *Yoshizaki v. Hilo Hospital,* 50 Haw. 150, 433 P.2d 220 (1967), the statute of limitations does not begin to run until the time when the injured party discovered or should have reasonably discovered the tort.

The statute passed upon in *Yoshizaki* was RLH 1955 § 241-7 (now § 657-7, HRS) then reading:

Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after.

It is identical with the libel and slander limitation statute in all pertinent respects. We, therefore, follow *Yoshizaki, supra,* and hold that a claim for defamation accrues when the defamee discovers or reasonably should have discovered the publication of the defamation.

The allegations of the complaint are to the effect that Exhibit B was given to the so-called second disciplinary board on January 21, 1976 but that Appellant Hoke did not learn of the same until January 23. The affidavits do not establish the correctness or incorrectness of this allegation one way or the other. The complaint does claim that the exhibit was distributed to an earlier disciplinary board which rejected the charges therein.[3]

The distribution to the second board was a republication, a new and separate tort which started the statute running with respect to that publication when it was discovered or reasonably should have been discovered. 50 AM. JUR.2d, LIBEL AND SLANDER § 169

---

[2] If January 23, 1976 is the determinative date with respect to Exhibit B, the complaint was timely filed since the last day of the two-year period, January 22, 1978, was a Sunday and the complaint was filed the next day.

[3] Since that board did reject the charges, there was no actual damage to Hoke by the publication to it. Moreover, apparently Hoke knew of this publication in December 1975 so that, even if it had been actionable, a claim with respect to it would have been barred.

(1970). Therefore, the claim with respect to that republication was not barred by the statute of limitations.

However, we do not regard the dissemination of the charges in the two alleged defamatory documents to the persons charged with determining the correctness of the charges at Steps II and III of the grievance proceedings (after they had been first received by the so-called second disciplinary board) as actionable republications, particularly since the ultimate result of the grievance procedures was to clear Hoke of the charges against him and the dissemination was, thus, in no sense, harmful to his interests.

## III. THE LIABILITY OF APPELLEE PAUL UNDER COUNT II

### A. *The Alleged Claim for Malicious Official Harassment (Count II)*

Count II alleges in substance and in some detail a claim that Paul, over a period of many years continuing up to the date of the filing of the second complaint, intentionally and maliciously used his official position to harass Hoke. Paul did not attempt, by affidavit or otherwise, to establish that there was no factual basis for certain of the allegations, such as those in paragraph 2(g) of Count II, which alleges that he had, systematically and continuously, caused Hoke to be under surveillance and constant watch and investigation, in contravention of established policies and regulations and the ruling that Step III of the grievance procedure, from the time of Hoke's reinstatement in the police department up to and including the date of the filing of the second amended complaint. Moreover, there is certainly enough evidence in the affidavits filed in opposition to the motion for summary judgment for a reasonable trier of fact, who believed that evidence, to find that Hoke had clearly and convincingly established that Paul's course of conduct was malicious rather than for an otherwise proper purpose. We are therefore somewhat at a loss to understand how the court below could have granted summary judgment to Paul on Count II.

### B. *The Effect of the Statute of Limitations on Count II*

We note that if the appellants, on trial, are able to show that Count I of the complaint is not barred by the statute of limitations,

then the allegations with respect to Exhibits A and B in Count II will likewise not be barred since, obviously, the amendment will relate back with respect to those factual matters. *See* Rule 15(c), HRCP, and *Mauian Hotel v. Maui Pineapple Co.,* 52 Haw. 563, 481 P.2d 310 (1971).

If appellants prevail at trial, they should, however, be limited, on Count II, to damages accruing not more than two years immediately prior to the original filing of that Count, together with damages arising out of the two statements complained of, if it is found that there is a relation back under Rule 15(c), HRCP, to the allegations of Count I. 51 AM. JUR.2d, LIMITATION OF ACTIONS § 135 (1970) (compare *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509 (1970) ).

### C. *The Standard of Malice Under Count II*

The standard of malice and the degree of proof to be applied in determining liability under Count II is that laid down in *Medeiros, supra.* If, because of a relation back under Rule 15(c), HRCP, the publication of Exhibits A and B to the complaint is considered by the jury under this count, the *Medeiros,* not the *New York Times* standard, will apply to that consideration.

### IV. APPELLANT HELEN HOKE

Although, in the second amended complaint, Helen Hoke has alleged damages only for loss consortium, her affidavit reflects damage also because of emotional distress. If, on trial, she proves damage by reason of loss of consortium arising out of Paul's alleged tortious actions with respect to Hoke and/or she establishes, according to the standard laid down in *Rodrigues, supra,* that she has suffered damages by way of emotional distress arising out of Paul's alleged tortious conduct with respect to Hoke, she should be entitled to recover therefore on any count on which Hoke recovers damages. Her claim for relief, however, is not independent. If the jury, on trial, finds against Hoke and for Paul on either Counts I or II or both, then judgment should also be rendered against Helen Hoke on such count or counts.

### V. DUPLICATION OF DAMAGES

There can, of course, be no duplication of damages even if

486

Appellant Hoke, or both appellants, prevail on both counts.

Reversed and remanded for proceedings consistent with this opinion.

*Stanley H. Roehrig* and *Kazuhisa Abe* for appellants Arthur A. Hoke and Helen P. Hoke.

*Burnham H. Greeley (Carlsmith, Carlsmith, Wichman* and *Case* of counsel) for appellee Guy A. Paul.

*Patricia K. O'Toole,* Assistant Corporation Counsel, for appellee County of Hawaii.