**Jerry McCUTCHEON, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. S–1528.

Supreme Court of Alaska.

Nov. 13, 1987.

Robert H. Wagstaff, Anchorage, for appellant.

Larry R. Weeks, William E. Olmstead, Larry R. Weeks Law Offices, Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The principal question involved in this appeal is when the statute of limitations began to run for a libel action predicated upon allegedly defamatory affidavits filed pursuant to the dismissal of a criminal prosecution against plaintiff Jerry McCutcheon. Defendant State of Alaska contends that the applicable two-year limitations period expired prior to the filing of McCutcheon's complaint, and further that it is immune from the instant suit under the express statutory exception to the waiver of sovereign immunity for libel actions.[1] McCutcheon claims that he brought suit within the time permitted by the statute of limitations and also that the superior court erred in refusing to allow the addition of Acting District Attorney Richard Svobodny as a party defendant.

Because we hold that McCutcheon's cause of action for libel accrued more than two years before he brought this suit, we affirm the superior court's grant of summary judgment in favor of the state. This holding is also dispositive of McCutcheon's specification of error with respect to the court's denial of his motion to join the acting district attorney as a party defendant.

## I. BACKGROUND.

In 1982, plaintiff Jerry McCutcheon was charged with first and third degree assault as a result of an altercation with his landlords, Bette and Winfred Hamm. On July 26, 1983, Acting District Attorney Richard Svobodny dismissed the criminal prosecution against McCutcheon due to the unavailability of the Hamms as witnesses. Affidavits attached to the dismissal that explained the reasons underlying it were also filed with the court (in conformity with the usual practice of the district attorney's office) on July 26. The dismissal and affidavits, and a press release under Svobodny's signature, were issued to the press that same day. The contents of one of the affidavits comprise the subject of the instant defamation action.[2]

On July 29, an article in the *Juneau Empire* evening newspaper reported the dismissal of McCutcheon's case and quoted the key parts of the subject affidavits. On August 2, the dismissal was amended to describe more precisely the charges being dismissed; the amended dismissal was filed with the court on August 4, unaccompanied by any affidavits. No affidavits were released or re-released to the press at this point.

McCutcheon filed this defamation action on July 31, 1985. The state subsequently moved for dismissal or, in the alternative, for summary judgment, on the grounds that the action was barred by the applicable two-year statute of limitations, AS 09.-

---

1. The superior court articulated its view that the state was immune from McCutcheon's action even though a holding on this issue was made unnecessary by the court's dismissal of the case as barred by the statute of limitations. We agree, as discussed below, that sovereign immunity presents an alternate ground for dismissal of McCutcheon's claims against the state.

2. The press release issued by Svobodny simply stated that the state had dismissed the charges against McCutcheon and summarized the accompanying affidavits.

In our view the absolute privilege for statements made in the course of a judicial proceeding pertinent to matters in issue might extend to the contents of the allegedly defamatory affidavit here, *e.g., Hager v. Major*, 186 S.W.2d 564, 569 (Mo.1945); *see* W. Keeton, D. Dobbs, R. Keeton, and D. Owen, *Prosser and Keeton on the Law of Torts* § 114, at 817 (5th ed. 1984) [hereinafter Prosser and Keeton], and therefore only the press release, if defamatory, could provide a basis for a libel action. Because here both the press release and affidavit were released on the same day, this point does not affect our conclusions regarding the statute of limitations.

10.070.[3] The basis for the motion was that the alleged defamation was published, and thus the two-year period of limitations began to run, on July 26, 1983, the date of the issuance of the press release and affidavit. The state also asserted its immunity from libel actions under AS 09.50.250(3).[4]

McCutcheon opposed the state's motion and, in the alternative, moved to amend his complaint to add Svobodny individually as a defendant. He argued that the statute of limitations does not bar his claims because the defamatory material was "published" twice, on August 2, 1983, by virtue of the issuance of the press release, and on August 11, when a second press release was issued[5] following the amendment of the dismissal. That is, he contended that publication of the July 26 press release did not occur until August 2, based on a handwritten notation by the court clerk on the July 26 dismissal, "cc[:] Jail & Newspaper 8/2/83." Based on a similar notation made on the August 2 amended dismissal, "cc[:] Jail & Newspaper 8/11/83," he argued that the second publication occurred on August 11. Significantly, the clerk in her affidavit averred, "It was not our policy and I am sure that I did not send either the Affidavits or the press release to the jail or to the newspaper when sending a copy of dismissal."

Treating the state's motion as one for summary judgment, the superior court held that the two-year statute of limitations began to run on July 26, 1983, thus barring the action. The court indicated its view that the "discovery rule" did not apply, and that the date of publication of the defamatory material was the critical date (and the date of actual dismissal of the charges against McCutcheon, irrelevant) with respect to commencing the limitations period for a defamation action.

The court proceeded to address the other arguments raised by the parties, concluding that AS 09.50,250(3) applied to immunize the state against defamation claims and rejecting McCutcheon's argument that section .250(3) confers immunity only upon cabinet-level government officials.[6] The court further found that Svobodny here acted in a policy-making capacity, and, as a consequence of finding that his actions fell "within the outer perimeter" of the scope of his duties as district attorney, reasoned both that the state was immune and also that adding Svobodny individually as a defendant would be inappropriate.

The court entered written findings of fact and conclusions of law confirming the above-described oral rulings. McCutcheon filed a timely appeal.

## II. DISCUSSION.

### A. *Time of Commencement of Statute of Limitations.*

1. *When Did Publication of the Allegedly Defamatory Statements Occur for Purposes of Commencing the Statute of Limitations?*

McCutcheon's defamation action is governed by the two-year tort statute of limita-

---

3. AS 09.10.070 in part provides:
 *Actions to be brought in two years.* No person may bring an action (1) for *libel,* slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise ... unless commenced within two years.
 (Emphasis added.)

4. AS 09.50.250 in part provides:
 *Actionable claims against the state.* A person or corporation having a ... tort claim against the state may bring an action against the state in the superior court.... However, no action may be brought under this section if the claim
 ....
 (3) arises out of assault, battery, false imprisonment, false arrest, malicious prosecu-

tion, abuse of process, *libel,* slander, misrepresentation, deceit, or interference with contract rights.
(Emphasis added.)

5. The record contains no such documents. McCutcheon appears to base this contention on the sending of a copy of the August 2 amended dismissal to the newspaper by the court clerk.

6. McCutcheon also argued that the section .250(3) exceptions to the waiver of sovereign immunity violated the constitutional guarantee of equal protection under article I, section 1 of the Alaska Constitution. The superior court summarily dismissed this claim, finding that a rational basis existed for the defamation exception created by the legislature. We agree that McCutcheon's equal protection claim is without merit.

tions. AS 09.10.070;[7] *see Chiei v. Stern*, 561 P.2d 1216, 1217 (Alaska 1977). The statute begins to run upon "publication" of the allegedly defamatory statements. *Id.* at 1217. Because McCutcheon filed his complaint on July 31, 1985, the statute bars his claims if publication occurred prior to July 31, 1983.

"Publication" of defamatory matter generally imports its communication to someone other than the person defamed. *Id.* *See also* Prosser and Keeton § 113, at 797; Restatement (Second) of Torts § 577 & comment b (1977) [hereinafter Restatement 2d]. McCutcheon contends that the statements defaming him were "published" on two occasions, August 2 and August 11, the dates on which the court clerk apparently sent copies of the orders of dismissal of the charges against him to the Juneau newspaper.[8] He argues that each of these publications gives rise to a separate cause of action; that his defamation claims are timely as to the August 11 publication; and that his claims are also timely with respect to the July 26 or August 2 publication because the August 11 publication was an "amendment" which "consummated" the earlier defamation, and because the defamation itself was incomplete until the actual dismissal of the criminal charges.

■ McCutcheon's arguments are both factually and legally unsound. First, McCutcheon has presented no affidavits or other materials in opposing the state's dismissal motion that controvert Svobodny's averment that the affidavit containing the allegedly defamatory statements was filed with the court and released to the press on July 26, 1983. Nor does he point to any

evidence that the July 26 press release referring to and summarizing the allegedly defamatory affidavit was pre-dated and actually released at some later time. Thus, it appears on this record that the July 26 issuance of the affidavit and press release constitutes publication of the alleged defamation.[9] Giving McCutcheon the benefit of all reasonable inferences on this point, publication of the allegedly defamatory statements by the state occurred at the latest on July 29, 1983, the date of the newspaper article reporting them. Thus, the statute of limitations still expired prior to the filing of McCutcheon's action on July 31, 1985.

McCutcheon's contention that his claims are not time barred because the alleged subsequent publications give rise to a separate and distinct cause of action, thus recommencing the running of the statute of limitations, in essence asks this court to recognize and apply the "multiple publication" rule. This traditional common law rule is that each communication of the same defamatory matter constitutes a separate publication for which a distinct cause of action arises. *See, e.g., Lewis v. Reader's Digest Ass'n*, 162 Mont. 401, 512 P.2d 702, 704–05 (1973); Prosser and Keeton § 113, at 799; Restatement 2d § 577A(1) & comment a. Most courts, however, in part to prevent effective circumvention of applicable limitations periods, have abandoned this rule in favor of a "single publication" rule, which treats any integrated publication, such as one edition of a book or issue of a magazine, one radio or television broadcast, or any similar aggregate com-

---

**7.** *See supra* note 3.

**8.** As the state points out, McCutcheon's position as to the first publication is inconsistent with the fact that the newspaper article based on the allegedly defamatory affidavit appeared on July 29. McCutcheon's brief is also internally inconsistent; he first argues that "the first of two defamatory 'press releases' ... was published on July 26, 1983," and later that "[t]he first 'publication' by press release occurred on August 2, 1983."

**9.** As the court observed in *Rutherford v. Johnson*, 250 Cal.App.2d 316, 58 Cal.Rptr. 546 (Cal. App.1967), in discussing defamatory statements

contained in affidavits filed in a prior case, "[a] cause of action ordinarily arises when the wrongful act is committed," and "[t]he wrong alleged here would arise when defendant filed an allegedly defamatory affidavit which a newspaper might publish and thus disseminate the defamation." *Id.* 58 Cal.Rptr. at 548 n. 1. In *Munafo v. Helfand*, 140 F.Supp. 234, 237 (S.D.N.Y.1956), where the libel count arose from a press release issued by the defendant at a press conference where reporters were assembled, the court said, "Of course the delivery of the release to the newspapermen was publication in and of itself." (Footnote omitted.)

munication which simultaneously reaches a large number of persons, as a single publication. *See, e.g., Gregoire v. G.P. Putnam's Sons,* 298 N.Y. 119, 81 N.E.2d 45 (1948); *Graham v. Today's Spirit,* 503 Pa. 52, 468 A.2d 454 (1983); Prosser and Keeton § 113, at 800; Restatement 2d § 577A(3). *See generally* Uniform Single Publication Act, 14 U.L.A. 351 (1980).

Application of either the single publication rule or the multiple publication rule to the facts of this case would cause the statute of limitations to begin to run on July 26, 1983. Under the single publication rule, we would consider the purported re-issuance of the subject affidavits and press release part of the same publication,[10] and the limitations period would thus have expired prior to the filing of McCutcheon's complaint as a matter of law. Under the multiple publication rule, the statute of limitations would still bar the action because the record contains no evidence apart from McCutcheon's bald assertion that the affidavit and press release were "published" at any time other than on July 26, 1983. Svobodny's affidavit indicates that the amended dismissal was filed with the court unaccompanied by the affidavits tendered with the original dismissal, and that no press release was issued with the August 11 amended dismissal. In support of his contrary position, McCutcheon seems to rely wholly on the "cc[:] Jail & Newspaper" notation made by the court clerk on the dismissal itself; although the court expressly gave McCutcheon an opportunity to respond to Svobodny's affidavit, McCutcheon's reply affidavit did not contradict

Svobodny on this point, and the clerk's notation makes no reference to any press release or affidavit. As previously noted, she stated in her affidavit that she did not send a copy of the subject affidavit or press release to the newspaper along with the dismissal, and the record contains no affidavit or other document issued with the amended dismissal. On this set of facts, no reasonable inference can be drawn in McCutcheon's favor that a subsequent publication of the defamation occurred after July 26.

■ We also reject McCutcheon's argument that the statute of limitations had not expired prior to the filing of his action because the purported August 11 publication was an "amendment" to the first which "consummated" the earlier defamation. McCutcheon cites no authority for this amendment/consummation theory, but other jurisdictions have rejected somewhat analogous "relation back" or "continuing course of conduct" arguments. For example, the plaintiff in *Spears Free Clinic & Hospital v. Maier,* 128 Colo. 263, 261 P.2d 489 (1953) (en banc), argued that libelous statements written by the defendant doctor on a death certificate kept on public file in the state office of vital statistics "have been continually and continuously published from and since the said date [of their writing] and are now being so published." *Id.* 261 P.2d at 490–91. The court responded:

> Such is not the law. The fact that many people read a libel is evidence as to the extent of damage therefrom, but does

---

**10.** Concededly, a re-printing of libelous matter or a new edition—a re-publication distinct from the original—has been considered a separate publication for purposes of commencing the limitations period in "single publication" jurisdictions. *See Dodd v. Harper & Bros.,* 3 A.D.2d 548, 162 N.Y.S.2d 419 (1957) (per curiam), *appeal dismissed,* 4 N.Y.2d 958, 175 N.Y.S.2d 826, 151 N.E.2d 622 (1958); Restatement 2d § 577A, comment d. However, the justification offered for this exception—that the re-publication is intended to and does reach a new audience, *id.*—is inapplicable here. The amended dismissal was intended not to repeat the grounds for the dismissal of the charges against McCutcheon, but rather to clarify, for those who had already learned of the dismissal, what charges were

dismissed. *Cf. McGlue v. Weekly Publications, Inc.,* 63 F.Supp. 744 (D.Mass.1946) (sending of additional copies of libelous publication by way of replacement will not prevent operation of the statute of limitations from the time of the original publication); *Klein v. Biben,* 296 N.Y. 638, 69 N.E.2d 682 (1946) (per curiam) (libel repeated by specific reference thereto in subsequent issue of periodical in which it first appeared does not constitute re-publication of earlier libel). "What matters is the new wound to reputation" by the repeated defamation, *Wheeler v. Dell Publishing Co.,* 300 F.2d 372, 375 (7th Cir.1962) (holding action not time barred due to re-printings of libel within limitations period prior to action), and no new injury was present here.

not in itself establish publication as to each reader. So to urge is to confuse the result of libel with the act of libel.... Plaintiff's novel "theory of continuous publication" as here argued would apply equally to any published or written statement continuing of record or in the hands of others, and to hold that the possibility or likelihood of its being read from time to time by other people would constitute "continuing publication" would effectively nullify the statute of limitations.

*Id.* at 491–92.[11]

■ McCutcheon's claim that the tort against him was incomplete until the actual dismissal of the charges against him is similarly untenable. The California Court of Appeal in *Rutherford v. Johnson,* 250 Cal.App.2d 316, 58 Cal.Rptr. 546, 548 n. 1 (1967), specifically disavowed the view that publication of affidavits did not occur until termination of the action in which they were filed and that the wrong depended on who ultimately prevailed therein. *See also Forman v. Mississippi Publishers Corp.,* 195 Miss. 90, 14 So.2d 344, 347 (1943) ("Since the gravamen of the offense is ... the degrading of reputation, the right accrued as soon as the paper was exhibited to third persons in whom alone such repute is resident. *The tort is then complete* even though the damage may continue or even accumulate." (Citation omitted and emphasis added)).

In short, none of McCutcheon's theories provides a basis for avoiding the statute of limitations bar imposed by the July 26 publication of the allegedly defamatory statements.

**2.** *Discovery Rule.*

McCutcheon also argues that the "discovery rule" should operate to toll the statute of limitations of this action until Au-

gust 3 or 4, 1983, the dates on which he learned of the existence of the defamatory statements and read the newspaper article reporting them. Application of the discovery rule would mean that the statute of limitations would not begin to run until McCutcheon discovered or reasonably should have discovered the existence of all the elements of his cause of action. *See Greater Area, Inc. v. Bookman,* 657 P.2d 828, 829 (Alaska 1982).

We first extended the discovery rule beyond the context of professional malpractice in which the rule originated in *Hanebuth v. Bell Helicopter Int'l,* 694 P.2d 143, 144 (Alaska 1984), *quoting Stoleson v. United States,* 629 F.2d 1265, 1269 (7th Cir.1980), ("the nature of the problems faced by plaintiff in discovering his injury and its cause ... governs the applicability of the discovery rule" (footnote omitted)). *See also Hazen v. Municipality of Anchorage,* 718 P.2d 456, 464 (Alaska 1986); *Gudenau & Co. v. Sweeney Ins.,* 736 P.2d 763 (Alaska 1987).

■ What McCutcheon fails to recognize here is that knowledge of the defamatory statements on the part of the person libeled is not a necessary element of a cause of action for libel:

The mere speaking or writing of defamatory words, it is well settled ... is not actionable unless such words are heard or read and understood by persons other than the defamed; hence, the cause of action accrues only upon the satisfaction of this condition. The fact that the person defamed had no knowledge of the defamation, until shortly before the action is brought, is of no consequence.

*Hartmann v. Time, Inc.,* 64 F.Supp. 671, 678 (E.D.Pa.1946), *modified on other grounds,* 166 F.2d 127 (3rd Cir.1947), *cert.*

---

11. *See also Terry v. County of Orleans,* 72 A.D.2d 925, 422 N.Y.S.2d 826, 827, *modified on other grounds,* 72 A.D.2d 927, 422 N.Y.S.2d 872 (1979) (emphasis added) (the statutory time "cannot be enlarged on a continuing course of conduct theory since a cause of action in slander accrues upon the publication of the matter complained of and *each publication gives rise to a separate cause of action which does not relate back* to the earlier publication"); *cf. Zuck v. Interstate Pub-*

*lishing Corp.,* 317 F.2d 727, 729–30 (2d Cir.1963), in which the court said that under the single publication rule, publication of libelous statements "gives rise to but one cause of action, after the accrual of which subsequent distributions may increase plaintiff's compensable damages but do not create independent causes of action *or* start the statute of limitations running anew." (Emphasis added.)

*denied,* 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948); *see also Brown v. American Broadcasting Co.,* 704 F.2d 1296, 1299–1300 (4th Cir.1983) (necessary elements of libel action present, if ever, upon broadcast; accrual not dependent on plaintiff experiencing emotional distress when she learned of broadcast); *Brown v. Chicago, Rock Island & Pac. R.R.,* 212 F.Supp. 832, 836 (W.D.Mo.), *aff'd,* 323 F.2d 420 (8th Cir.1963); *Patterson v. Renstrom,* 188 Neb. 78, 195 N.W.2d 193 (1972).

Furthermore, no particular obstacles prevented McCutcheon from discovering the publication of the defamation here. *Cf. Lashlee v. Sumner,* 570 F.2d 107, 109–10 (6th Cir.1978) (deliberate concealment of libel cause of action by defendant will postpone accrual of cause of action, but mere ignorance of plaintiff will not toll statute). Those courts which have applied the discovery rule to the accrual of libel actions have done so in situations where the libel "was committed in an inherently secretive manner," such as by a letter contained in a confidential personnel file or in confidential credit reports. *McGuiness v. Motor Trend Magazine,* 129 Cal.App.3d 59, 180 Cal.Rptr. 784, 786 (1982) (rejecting application of discovery rule where libel appeared in nationally distributed magazine); *see, e.g., Manguso v. Oceanside Unified School Dist.,* 88 Cal.App.3d 725, 152 Cal.Rptr. 27 (1979); *White v. Gurnsey,* 48 Or.App. 931, 618 P.2d 975 (1980); *Kittinger v. Boeing Co.,* 585 P.2d 812 (Wash.App.1978); *infra* note 12. Further, it has been noted that "there is a decided modern trend to apply the rule of discovery in ... cases in which the alleged defamatory statements are published under circumstances in which they are likely to be kept secret from the injured party

*for a considerable time." Clark v. Airesearch Mfg. Co.,* 138 Ariz. 240, 673 P.2d 984, 986 (1983) (emphasis added) (holding rule applies where defamation is peculiarly likely to be concealed from plaintiff, as in confidential memo or credit report); *e.g., Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 61 Ill.2d 129, 334 N.E.2d 160 (1975); *Sears, Roebuck & Co. v. Ulman,* 287 Md. 397, 412 A.2d 1240 (1980); *Kelley v. Rinkle,* 532 S.W.2d 947 (Tex.1976).[12]

■ Given the short time lapse between the July 26 publication and McCutcheon's alleged discovery of the defamation, it is evident that McCutcheon is trying to stretch the rule well beyond any of its prior applications to cover his otherwise inexcusable delay in filing suit. To conclude that the libel here was "inherently undiscoverable" for the short period between its publication and the date of the newspaper report such that the discovery rule should toll the statute would distort the intent of the rule to assist defamation plaintiffs who are truly disadvantaged by a secretive publication. Moreover, even if we were to apply the discovery rule to defamation actions without the "inherently undiscoverable" limitation, we would nonetheless find McCutcheon's claims time barred because at the latest he "reasonably should have discovered" the existence of the defamatory statements on July 29, 1983, the date of the newspaper article reporting them (or the following day, since the *Juneau Empire* is an evening newspaper). The statute of limitations could thus be tolled only until July 30, 1983, and the claims filed by

12. The court in each of these cases held that the discovery rule applies where libel occurs by publication of a defamatory report to a credit agency, and observed that persons so defamed ordinarily have no reason to suspect existence of such reports until applying for credit, such that the limitations period in many instances would have expired before the reports reasonably could have been discovered by the injured person.

We are only aware of one jurisdiction that has adopted the discovery rule for defamation cases without limiting it to this type of case. The Hawaii Supreme Court, in *Hoke v. Paul,* 65 Hawaii 478, 653 P.2d 1155, 1159 (1982), approved wholesale application of the rule to libel and slander actions in order to maintain consistency with its prior holding that the rule tolls Hawaii's statute of limitations for actions for personal injury or property damage, the operative language of which is identical to Hawaii's statute of limitations for libel and slander. The court did not discuss the nature of defamation claims and undertook no analysis beyond noting the parallelism of the limitations statutes. *See id.*

McCutcheon on July 31, 1985, would remain untimely.[13]

## B. *Statutory Immunity.*

■ Alternatively, even if the statute of limitations did not apply to bar McCutcheon's libel claims against the state, we would affirm the superior court's grant of summary judgment because the state enjoys immunity from the suit under AS 09.-50.250(3), which places libel actions among the express exceptions to the waiver of sovereign immunity.[14] *See supra* note 4.

McCutcheon argues against application of section .250(3) here based on his contention that sovereign immunity extends only to high-ranking state officials acting within the scope of their official duties. He misconstrues the authorities offered to substantiate his asserted limitation of sovereign immunity to high-ranking officials; they stand not for the proposition that the state is *not* immune from suit where a lower-ranking official or an official acting outside the scope of his duties is charged with defamation, but rather that the official may be personally liable for defamatory statements made within the scope of his duties.[15] McCutcheon's argument confuses sovereign immunity under section .250(3) with the common law doctrine of "official" or executive immunity, which under certain circumstances shields public officials from personal liability arising from the exercise of their official duties. *See Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 162 n. 29 (Alaska 1987); *State ex rel. Eli Lilly & Co. v. Gaertner*, 619 S.W.2d 761, 763 & n. 5 (Mo.App.1981); *Tilton v. Dougherty*, 126 N.H. 294, 493 A.2d 442, 444–45 (1985); *Lister v. Board of*

*Regents of Univ. of Wisconsin Sys.*, 72 Wis.2d 282, 240 N.W.2d 610, 620–21 (1976); Prosser and Keeton § 132, at 1056.

■ Even if, as McCutcheon contends, Acting District Attorney Svobodny did not fall within the category of government officials entitled to common law immunity from defamation claims, that fact is material to the issue of his personal liability to McCutcheon but is irrelevant to the issue of state responsibility. Moreover, if Svobodny was not acting in his capacity as a state employee in committing the allegedly libelous acts, then the state could not be held accountable for those acts in the first place.

In addition, as the state argues, section .250(3) on its face mandates finding the state immune from McCutcheon's libel action. We have previously held that where, as here, a statute's meaning appears to be clear and unambiguous, the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent. *University of Alaska v. Geistauts*, 666 P.2d 424, 428 n. 5 (Alaska 1983); *cf. Municipality of Anchorage v. Sisters of Providence in Washington, Inc.*, 628 P.2d 22, 27 n. 6 (Alaska 1981) (rejecting formulation of plain meaning rule which mandates disregarding all legislative history if the statute's wording is clear and unambiguous on its face). McCutcheon has not carried this burden. He has presented no evidence of legislative intent (and none has been located independently) to limit the libel exception such that sovereign immunity exists only when libel is committed by high-level government officials. Furthermore, he has mustered no

13. In this regard, we note that the limitations period computed from July 30, 1983, expired on Tuesday, July 30, 1985, and not on July 31, 1985, as would have been the case if July 30 had been a Sunday or legal holiday. *See David v. Sturm, Ruger & Co.*, 557 P.2d 1133, 1135 (Alaska 1976).

14. This court may affirm a grant of summary judgment on grounds other than those relied upon by the superior court which support the result reached. *Carlson v. State*, 598 P.2d 969, 973 (Alaska 1979). Here, as noted above, the court dismissed the case as barred by the expiration of the statute of limitations but stated in

addition its conclusion that section .250(3) also barred the action.

15. *See, e.g., Saroyan v. Burkett*, 57 Cal.2d 706, 21 Cal.Rptr. 557, 371 P.2d 293 (1962) (absolute privilege for state officials akin to cabinet members in rank to publish defamatory statements that have some relation to executive proceeding in which official is acting); *Gold Seal Chinchillas, Inc. v. State*, 69 Wash.2d 828, 420 P.2d 698 (1966) (attorney general and members of his staff entitled to absolute privilege in issuing allegedly libelous press release concerning initiation of litigation); Restatement 2d § 591.

principled arguments militating in favor of such an interpretation of AS 09.50.250.

Based on the foregoing, we conclude that section .250(3) immunity would preclude maintenance of McCutcheon's claims against the state.

### C. Joinder of Svobodny as Party Defendant.

 McCutcheon contends that the superior court should have allowed him to amend his complaint to add Svobodny as a party defendant. McCutcheon sought leave to amend on December 3, 1985, after the state moved for summary judgment. For the amendment to be allowable under Alaska Rule of Civil Procedure 15, since the applicable two-year statute of limitations had run on the claim against Svobodny, the amended pleading must "relate back" to the date of a timely original pleading. See Alaska R.Civ.P. 15(c);[16] Mari-

16. Civil Rule 15(c) provides:
 *Relation Back of Amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. *An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.*
 (Emphasis added.) Civil Rule 15(c) requirements are strictly construed when the amendment adds a new defendant. *Atkins v. DeHaviland Aircraft,* 699 P.2d 352, 354 (Alaska 1985); *see Adkins v. Nabors Alaska Drilling,* 609 P.2d 15, 20–21 (Alaska 1980).

17. We note that this result would not necessarily obtain if the amendment in question sought to add a different claim against the same party. *See Santana v. Holiday Inns, Inc.,* 686 F.2d 736, 739–40 (9th Cir.1982) (amendment alleging new claim may relate back even though original claim is time-barred); *Caldwell v. Martin Marietta Corp.,* 632 F.2d 1184 (5th Cir.1980) (same).

18. In general, leave to amend is properly denied where the amended pleading could be defeated by a motion to dismiss or to strike, since granting such leave would thus be futile. *See De-*

*nari v. Dunleavy,* 86 F.R.D. 127 (E.D.Pa. 1980). The amendment here, however, can only relate back to the date of a complaint which we have already determined to be barred by the applicable statute of limitations. *See Reynolds v. United States,* 748 F.2d 291, 293 (5th Cir.1984) (rejecting argument that federal counterpart of Alaska rule authorizes relation back of amended pleading to date earlier than that of original pleading). Since McCutcheon's claim against Svobodny is the same as his original claim against the state, it is similarly time barred,[17] and thus, regardless of whether the Civil Rule 15(c) relation back prerequisites were satisfied, the superior court properly denied McCutcheon's request for leave to amend.[18]

AFFIRMED.

MATTHEWS, J., concurs.

*Loach v. Woodley,* 405 F.2d 496, 496–97 (5th Cir.1968) (per curiam); *NDK Corp. v. Local 1550, United Food & Commercial Workers Int'l Union,* 709 F.2d 491, 493 (7th Cir.1983); 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4], at 15–80 (2d ed. 1985); *e.g., Reynolds,* 748 F.2d at 293 (amended complaint properly dismissed for lack of subject matter jurisdiction where it related back to date on which court lacked such jurisdiction over original claim); *Marx v. Centran Corp.,* 747 F.2d 1536, 1551 (6th Cir.1984) (affirming denial of leave to amend to add claims which would be time barred as of date of initial complaint), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).

In any event, in our view the Civil Rule 15(c) prerequisites were not satisfied in this case. Svobodny's affidavit indicates that he first learned of the existence of this action on August 13, 1985, a point which McCutcheon has not attempted to dispute. Thus, even conceding that the statute of limitations period began to run on August 11, 1983, the latest date propounded by McCutcheon, Svobodny did not receive notice of the action within the limitations period as required by Civil Rule 15(c)(1). *See supra* note 15. We reject McCutcheon's argument that notice to the state should serve as notice to Svododny by virtue of his status as a state employee in light of the fact that the original notice was not even served upon the division of the Department of Law where Svobodny is employed. Moreover, if Svobodny did not know of the existence of McCutcheon's action within the limitations period, he cannot be held to have had the requisite knowledge under Civil Rule 15(c)(2) that the action would be brought against him but for a mistake in identity of the

MATTHEWS, Justice, concurring.

I see no reason to carve out an exception to the common law discovery rule for public libel cases. Thus, I believe that there is a question of fact as to when the appellant reasonably should have discovered the defamation. Nonetheless, I concur with the court's reasoning on the statutory immunity grounds expressed in part B of the opinion. I also concur with the court's treatment of Svobodny's claim, because the Civil Rule 15(c) relation back requirements were not satisfied, as explained in footnote 17 of the opinion.

proper party. Further, the state correctly asserts that the party seeking the amendment must demonstrate a true mistake concerning the identity or name of the proper party in order

for the claim to relate back, *see Atkins,* 699 P.2d at 354–55, and McCutcheon has not attempted to make such a demonstration.