Traci A. PHILLIPS and Gregory Phillips, Appellants,

v.

Carl S. GIERINGER, Appellee.

No. S–10909.

Supreme Court of Alaska.

March 11, 2005.

Robert A. Rehbock, Rehbock & Rehbock, Anchorage, for Appellants.

Joe M. Huddleston and Laurence P. Keyes, Hughes Thorsness Powell Huddleston & Bauman LLC, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Traci Phillips was involved in an automobile accident with Carl Gieringer, who was insured under the same State Farm auto insurance policy as his father, Robert Gieringer. After some negotiation and discussion of the case with State Farm, Phillips mistakenly named Carl's father as the defendant driver in the complaint which she filed in a personal injury suit. After the statute of limitations had run, Phillips moved to amend the complaint to name Carl as a defendant. Because Carl maintained that he was unaware of the lawsuit during the limitations

period, the superior court dismissed the complaint on statute of limitations grounds, concluding that the new complaint did not relate back to the timely filing against Carl's father. Phillips appeals. Because there is a rebuttable presumption that notice of the complaint and knowledge of the mistake can be imputed to an insured through his insurance company, we reverse the superior court's decision.

## II. FACTS AND PROCEEDINGS

On August 16, 1999, Carl Gieringer and Traci Phillips were involved in an automobile accident in the Alaska Regional Hospital parking lot. Although Carl was not a minor, he was insured under the same State Farm auto insurance policy as his father, Dr. Robert Gieringer, and was driving his mother's car at the time of the accident. Phillips, a nurse, states that she knew of Dr. Robert Gieringer and learned at the time of the accident that the driver was his son.

In April 2001 Phillips retained attorney Robert Rehbock to represent her in her claim of injuries received due to the accident. Rehbock contacted State Farm on April 30, 2001 to inform the company that he would represent Phillips on her claim, and a State Farm adjuster responded in May 2001, asking for Phillips's medical records and stating that State Farm would make a settlement offer after reviewing the records and evaluating the claim. State Farm's letter identified "our insured" as "Robert Gieringer."

Phillips hand delivered a copy of a draft complaint to State Farm on July 16, 2001, with a letter to the adjuster explaining that due to the "steadily approaching statute of limitations deadline," Phillips would file a complaint to preserve her claim if a settlement could not be reached. Two days later, on July 18, 2001, Phillips filed a complaint against "Robert E. Gieringer" but described the "defendant" in her complaint as the driver of the motor vehicle and directed all her claims against the driver.

Although Phillips knew that the driver was the son of Dr. Robert Gieringer, Phillips's counsel mistakenly assumed that the son had the same name as the father. The police report of the accident stated that the driver's name was Carl Gieringer, but Phillips's counsel did not have a copy of the accident report when drafting the complaint.

In December 2001 Phillips faxed a letter to the State Farm adjuster requesting Robert Gieringer's address for service of process. The letter explained, "[t]he only address we have is Dr. Robert E. Gieringer's office and it was Dr. Gieringer's son who should be properly served in this matter. We do not wish to inconvenience Dr. Gieringer...." State Farm's adjuster provided the name of Dr. Gieringer's son as "Karl Gieringer" and noted that "Karl" was believed to be a student attending college outside Alaska. Phillips's attorney wrote to State Farm in late January 2002 to apologize for his error, but this time he misidentified the son as "Keith" or "Kieth." Phillips asked a second time for the son's address and requested that State Farm inform the insureds of the complaint against the son and to direct the matter to the son's counsel. Phillips also moved to amend the complaint to name "Keith" Gieringer as the defendant, and the superior court granted leave for the amendment.

Counsel for State Farm, Joe Huddleston, responded to Phillips in February 2002 stating: "we are not in a position to follow your instructions to notify Robert or Carl Gieringer of anything because no action has been filed against them. I suspect that neither one of them has any knowledge of this case because you have never properly filed or served either one of them." The letter ended by stating "the statute of limitations on this matter ran approximately six months ago."

On March 7, 2002, the superior court granted Phillips's second motion to amend the complaint to name Carl Gieringer as the defendant. After an unsuccessful effort to locate Carl Gieringer, Phillips moved for service by publication on April 2, 2002. The superior court granted the motion, finding that it appeared from Phillips's affidavit that "Defendant has received constructive notice by the results of Plaintiff's efforts to serve Defendant...."

But Carl Gieringer stated in an affidavit signed in New Hampshire that "[t]he first

time that I learned that a lawsuit had been filed against me was in late April of 2002 or early May." Carl Gieringer moved to dismiss the claim on statute of limitations grounds in May 2002. Oral argument on the motion to dismiss was held on August 20, 2002. The superior court initially ordered that due to the lack of evidence regarding the length of Gieringer's absence from the state, Phillips would have one month "to produce evidence that Gieringer's absence from the state brings his complaint within the statute of limitations." On November 25, 2002, the superior court granted Carl's motion for reconsideration and his motion to dismiss, concluding that his absence from the state did not toll the statute of limitations because Gieringer was "at all times open to substituted service of process through the commissioner" of administration under AS 09.05.020 and AS 09.05.040. The superior court further ruled that Phillips's second amended complaint did not relate back to the timely original complaint because Carl's "unchallenged affidavit conclusively establishes that he was unaware of the lawsuit until late April or May of 2002." Phillips moved for reconsideration of this order but his motion was denied. The court entered judgment for Carl Gieringer and awarded attorney's fees on January 14, 2003. Phillips appeals.

## III. DISCUSSION

### A. Standard of Review

 The superior court granted Carl Gieringer's Alaska Civil Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) requires that the plaintiff's factual allegations be taken as true, and that matters outside of the pleadings should be excluded from the superior court's consideration.[1] In this case the superior court relied on Carl Gieringer's

"unchallenged affidavit" when ruling that Phillips's amended complaint did not relate back. The superior court also held "[e]ven when the facts are construed in favor of Phillips, there remains no genuine issue of material fact, and Mr. Gieringer is entitled to judgment as a matter of law." This ruling implies that the superior court may have converted the Rule 12(b)(6) motion to a summary judgment motion. Alaska Civil Rule 12(b)(7) provides, in relevant part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

We have consistently held that the superior court must expressly state whether it has excluded or considered matters outside of the pleadings when deciding a Rule 12(b)(6) motion to dismiss.[2] If the superior court does not exclude materials outside of the pleadings, it is under a mandatory duty to treat the Rule 12(b)(6) motion as a summary judgment motion.[3] The reasoning behind this rule is that a court's inquiry on a motion under Rule 12(b)(6) essentially is limited to the content of the complaint, while summary judgment " 'involves the use of pleadings, depositions, answers to interrogatories, and affidavits.' "[4]

 In the present case, the superior court expressly relied on Carl Gieringer's affidavit and therefore was under a duty to convert the Rule 12(b)(6) motion to a summary judgment motion. Although it is not clear whether the superior court properly treated the motion as one for summary judgment,[5] we elect to review the superior court's

---

1. *See Martin v. Mears*, 602 P.2d 421, 425–26 (Alaska 1979).

2. *Alaska Nat'l Ins. Co. v. Jones*, 993 P.2d 424, 427 (Alaska 1999); *Reed v. Municipality of Anchorage*, 741 P.2d 1181, 1184 (Alaska 1987); *Martin*, 602 P.2d at 426.

3. *Reed*, 741 P.2d at 1184; *Martin*, 602 P.2d at 426.

4. *Martin*, 602 P.2d at 426 n. 5 (quoting 5 CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356, at 592 (1969 & Supp.1979)).

5. When considering a summary judgment motion the court should draw all reasonable *inferences*

decision as a motion for summary judgment because the superior court failed to limit its inquiry to the content of the pleadings.

## B. The Amendment to Phillips's Complaint Relates Back to the Original Pleading.

■ Alaska Rule of Civil Procedure 15(c) provides that when the basic claim arises out of the conduct set forth in the original pleading, an amendment changing the party relates back to the date of the original pleading if: "within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." We have also concluded that when the original complaint is timely filed, the language "within the period provided by law for commencing the action" encompasses the reasonable time for service of process permitted by the rule for a named defendant.[6] Because the factual allegations set forth in Phillips's amended complaint remain unchanged from the original pleading, we proceed to consider whether the requirements of notice and knowledge were met within the 120 days allowed for timely service after filing of the complaint.

### 1. Notice of the action within the statute of limitations period

■ We noted in *Farmer v. State* that the requirement that the party receive notice within the statute of limitations period has been characterized as the "linchpin" of Rule 15(c).[7] We recognized that "[i]f the original pleading gives fair notice of the general fact situation out of which the claim arises, the defendant will not be deprived of any protection which the state statute of limitations was designed to afford him." [8] Thus, fairness is the "touchstone of the relation back doctrine." [9] We must determine whether "the substituted or additional party [had] fair notice of the cause of action, within the prescribed statutory period, such that the party's rights will not be prejudiced." [10] In applying this rule, we are governed by the well-established philosophy that "the rules should be liberally construed to insure that no plaintiff is deprived of his day in court solely because of the intricacies and technical limitations of pleading." [11] With these principles in mind we proceed to consider whether Carl Gieringer had constructive or imputed notice [12] of the institution of Phillips's complaint within the statutory period such that his rights will not be prejudiced.

We noted in *Farmer v. State* that "a developing body of law ... allows notice under Civil Rule 15(c) to be given constructively where the additional party brought in by amendment is represented by the same attorney as the existing parties." [13] In *Farmer*, the plaintiff brought suit against the State of Alaska and two state troopers five days before the statute of limitations deadline, naming one of the troopers as a "John Doe" defendant because he did not know his proper name.[14] On appeal Farmer argued that his amended complaint substituting Mike Metrokin for the "John Doe" defendant should relate back to the date of the original complaint because Metrokin had constructive

---

in favor of the nonmovant. *Barios v. Brooks Range Supply, Inc.*, 26 P.3d 1082, 1085 (Alaska 2001).

6. *West v. Buchanan*, 981 P.2d 1065, 1068 (Alaska 1999) (citing Alaska R. Civ. P. 15(c)).

7. 788 P.2d 43, 48 (Alaska 1990).

8. *Id.* at 47.

9. *Id.*

10. *Id.*

11. *Id.*

12. We note that in her motion for reconsideration Phillips presented evidence from Huddleston's billing records which might create a material question of fact as to Carl's actual notice of the complaint. As that evidence was not before the superior court when it made the summary judgment ruling from which Phillips appeals, we do not address this issue.

13. 788 P.2d at 49.

14. *Id.* at 44–45.

and imputed notice.[15] We agreed with Farmer, and adopted the "identity of interest" approach as to service on the state, its agencies, and officers.[16] We held in *Farmer* that under the identity of interests standard constructive notice could be imputed to Metrokin through his counsel, the state attorney general's office, which represented all of the defendants from the outset. We pointed out that

> the identity of interest standard usually requires a nexus between the new and the old parties as to the subject of the litigation and an analogous legal position within the case itself. Where the new and the old party share the same attorney, imputed notice can readily be found and the dictates of Civil Rule 15(c) are nonetheless adhered to.[17]

 In *Farmer*, we observed that imputation of notice under the identity of interest standard is particularly compelling in suits where a citizen is seeking redress from the state.[18] The question before us in this case is whether the identity of interest standard may also apply in suits against private parties.[19] In their treatise *Federal Practice and Procedure*, Professors Wright, Miller, and Kane explain that an "identity of interest" generally means "that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."[20] Thus, a "business operation" or other private relationship may also give rise to an identity of interest.

Whether in a public or private context, the objective of the theory "is to avoid the application of the statute of limitations when no prejudice would result to the party sought to be added by the amendment."[21]

Some courts have found that the identity of interest standard allows notice to be imputed through a shared insurance carrier when the insurer is contractually bound to protect the interests of the insured.[22] In *Angel v. Ray*, for example, the court held that there existed an identity of interest between an insured and the insurance company because "[u]nder the terms of the insurance, [the insurance company] was obligated to protect the interests of the substituted defendant."[23] In *Denver v. Forbes*, the court imputed notice through a shared insurer under factual circumstances very similar to the case at hand: the plaintiff in an auto collision mistakenly named the owner of the vehicle as the defendant when in fact the driver was the owner's daughter.[24] The *Denver* court permitted the plaintiff to amend the complaint because "the insurance company was aware of the actual facts well within the two-year period after the accident, and [because] no harm will be done if the daughter is substituted for the mother as defendant in the action."[25] But other courts have refused to impute knowledge from an insurance company to the insured on the grounds that the existence of an insured-insurer relationship does not automatically create an identity of interest.[26]

---

15. *Id.* at 46.

16. *Id.* at 49.

17. *Id.* (internal citation omitted).

18. *Id.* at 49.

19. For example, Professors Wright, Miller, and Kane note that "[a]n identity of interest has been found between a parent and a wholly owned subsidiary, as well as between related corporations whose officers, directors, or shareholders are substantially identical and who may have similar names or conduct their businesses from the same offices." CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1499, at 147–49 (2d ed.1990).

20. *Id.* at 146.

21. *Id.*

22. *Id.* at 150 & n. 9.

23. 285 F.Supp. 64, 66 (E.D.Wis.1968).

24. 26 F.R.D. 614, 616 (E.D.Pa.1960).

25. *Id.*

26. *See Pompey v. Lumpkin*, 321 F.Supp.2d 1254, 1263 (M.D.Ala.2004) (stating that shared insurance does not create an identity of interest when original and substituted parties might not have identity of interests); *Garcia v. Peter Carlton Enter., Ltd.*, 717 F.Supp. 1321, 1326 (N.D.Ill.1989) (noting that insured and insurance companies sometimes have antagonistic interests); *Rogatz v. Hospital General San Carlos*, 89 F.R.D. 298, 300 (D.P.R.1980) (same); *Alvarez v. Meadow Lane*

In routine cases, there will be an identity of interest between the insurer and the insured because insurance companies are typically required by contract to represent the interests of the insured. We recognize, however, that in some cases the interests of the insured and insurer will not be aligned. In such cases, it would be inappropriate to impute notice from the insurance company to the insured under an identity of interests theory. We therefore hold that there is a presumption that notice may be imputed from an insurer to the insured, but that this presumption may be rebutted if the insured can show that its interests conflict with the insurance company.

In the present case, Carl was insured under the same State Farm policy as his father Robert. On July 16 Phillips's attorney sent the State Farm adjuster a copy of the draft complaint along with a letter explaining that he would file the complaint if a settlement was not reached before August 15. It is undisputed that State Farm was aware of the potential suit in late July, well within the time allowed for a timely commencement of the action.[27] There is therefore a presumption that the notice to State Farm may be imputed to Carl. Nothing in the record before us indicates that Carl did not share an identity of interest with his insurance company; in fact, it became evident during the post summary judgment motion practice that State Farm's attorney met with Carl's mother to discuss the complaint and researched the statute of limitations issue on Carl's behalf. But on remand, Carl should have the opportunity to present any contrary evidence on this issue.

Rule 15(c) also requires that the notice of the action, whether actual or imputed, is such "that the party will not be prejudiced in maintaining his defense on the merits." It appears on the evidence presented to us that Carl has suffered no prejudice in maintaining his defense. In its denial of Phillips's motion for reconsideration the superior court explicitly found that Carl's defense would not be prejudiced by imputing notice of the action to him. Carl was covered under the same insurance policy as his father, and the evidence gathered by State Farm regarding the accident would be identical to that utilized if Carl were named a defendant.[28] The notice requirement of Rule 15(c) has therefore been met in this case.

### 2. Knowledge of mistake concerning the identity of the proper party

■ We last consider the knowledge and mistake requirements of Rule 15(c)(2). This provision of the rule requires that a party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [him]."[29]

As with our analysis of imputed notice, a strong case exists for imputing knowledge of the mistake to Carl. In *Farmer*, we noted that " '[k]nowledge can be imputed to a new defendant through his attorney who also represented the party or parties originally sued.' "[30] A number of courts have imputed knowledge of mistake through the insurance agent, and have held that it is necessary to judge "knowledge of the mistake from the

---

*Mall Ltd. P'ship*, 560 N.W.2d 588, 592 (Iowa 1997) ("Notice to an insurer is not notice to an insured.").

**27.** Phillips filed suit against Robert E. Gieringer on July 18, 2001, but did not immediately serve him with process. On January 3, 2002, the superior court found that Phillips had shown good cause for not having served the defendant and gave Phillips an additional 120 days to complete service. In March 2002 the court granted Phillips leave to file an amended complaint naming Carl Gieringer as the defendant. Phillips completed service on Carl Gieringer by publication on May 23, 2002.

**28.** *Cf. Siemion v. Rumfelt*, 825 P.2d 896, 900 (Alaska 1992) (finding that substituting son as defendant for father would not prejudice son's defense because son "was covered under his father's insurance policy, [and] the evidence gathered by his insurer regarding the accident would be identical to that utilized were [the son] a named defendant").

**29.** *West*, 981 P.2d at 1068 (citing Alaska R. Civ. P. 15(c)).

**30.** *Farmer*, 788 P.2d at 49 n. 16 (citing *Williams v. Ward*, 553 F.Supp. 1024, 1026 (W.D.N.Y. 1983)).

perspective of [the insurance company]." [31] And some courts have applied the identity of interests theory to the mistake requirement.[32]

In the present case we judge knowledge of the mistake from the perspective of the insurance company. Because the text of the complaint directed all allegations and claims of liability against the driver of the vehicle, the State Farm adjuster knew or should have understood upon reviewing the complaint that Phillips made a mistake when she named Robert as the defendant.[33] Other courts have determined that when a clear mistake has been made and an attorney or an insurer has knowledge of the mistake, the requirements of Rule 15(c)(2) are satisfied.[34] In the same manner in which there is a presumption that Carl had imputed notice of the action through State Farm, because he and his father were insured under the same policy, there is a presumption that Carl had imputed knowledge that he was the party who should have been sued.[35] We therefore conclude that unless Carl can rebut the presumption of imputed notice and knowledge, Phillips's amended complaint substituting

Carl Gieringer relates back to the original filing date.[36]

## IV. CONCLUSION

We therefore REVERSE the judgment of the superior court and REMAND this case for further proceedings consistent with this opinion.

---

**31.** *Red Arrow Stables, Ltd. v. Velasquez,* 725 N.E.2d 110, 116 (Ind.App.2000); *Smith v. TW Servs., Inc.,* 142 F.R.D. 144, 149 (M.D.Tenn. 1991) ("In this case we must judge knowledge of the mistake from the perspective of the insurance company."); *see also Craig v. Ludy,* 95 Wash. App. 715, 976 P.2d 1248, 1251 (1999) ("[T]he estate (through its insurer) knew that, but for the Craigs' mistake, the action would have been brought against it."); *Korn v. Royal Caribbean Cruise Line, Inc.,* 724 F.2d 1397, 1401 (9th Cir. 1984) (finding that there was sufficient community of interest to impute knowledge to the defendant through sales agent, operating agent, and insurance company).

**32.** *Advanced Power Sys., Inc. v. Hi–Tech Sys., Inc.,* 801 F.Supp. 1450, 1457 (E.D.Pa.1992) ("The notice and mistake elements are particularly intertwined when, as here, there is a close relation between the original party and the party to be added. In such a situation, failure to join the connected party is more immediately recognizable as error, and it is easier to establish that the new party should have known that, but for a mistake, she would have been included. Therefore, 'courts have generally held that the mistake condition is satisfied when the original party and added party have a close identity of interests.' ") (citing *Sounds Express Int'l, Ltd. v. Am. Themes & Tapes, Inc.,* 101 F.R.D. 694, 697 (S.D.N.Y. 1984)); *Sounds Express,* 101 F.R.D. at 697 ("identity of interests has also served as touch-

stone for determining whether the new party knew or should have known that 'but for' a mistake in identity, he would have been sued in the first instance") (citing *Florence v. Krasucki,* 533 F.Supp. 1047, 1053 (W.D.N.Y.1982)); *Holden v. R.J. Reynolds Indus., Inc.,* 82 F.R.D. 157, 161 (M.D.N.C.1979); *see also Johnson v. Goldstein,* 850 F.Supp. 327, 330 (E.D.Pa.1994); *cf. Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99, 103 (1st Cir.1979) ("The identity of interests concept, however, bears only on the requirement of Rule 15(c)(1) that the added party 'received such notice of the institution of the action' before the limitations period expired.").

**33.** *Sulzen v. Williams,* 977 P.2d 497, 504–05 (Utah App.1999) (concluding that the trial court abused its discretion in refusing to allow the Sulzens to amend their complaint so that the caption matched the text of the complaint when the text alleged that the children, and not the mother, were the negligent parties).

**34.** *Ayala Serrano v. Collazo Torres,* 650 F.Supp. 722, 728–29 (D.P.R.1986).

**35.** *See id.*

**36.** Because we reverse the superior court's ruling, we need not address Phillips's claims regarding tolling under AS 09.10.130.