*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LINDA SELLERS, | ) | |
| | ) | Supreme Court No. S-15685 |
| Petitioner, | ) | |
| | ) | Superior Court No. 4FA-14-01376 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STEPHAN KURDILLA and | ) | |
| DANIEL STROUD, | ) | No. 7116 - August 12, 2016 |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petition for Review from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Bethany Harbison, Judge, on appeal from the District Court of the State of Alaska, Fairbanks, Ben Seekins, Judge.

Appearances: Sandra K. Wilson, Stepovich & Vacura Law Office, Fairbanks, for Petitioner. Reilly Cosgrove and Michael C. Kramer, Kramer and Associates, Fairbanks, for Respondents.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.      INTRODUCTION

Several men were in a car that rear-ended the plaintiff's vehicle. The plaintiff sued the car's owner, believing he had been driving. The car's owner moved to dismiss the lawsuit on the basis of an affidavit from a second man, who claimed he

was driving at the time of the accident. The plaintiff amended her complaint to name both men. The second man then moved to dismiss the claim against him, arguing that under Alaska Civil Rule 15(c) the plaintiff's amended complaint did not relate back to the date of her initial filing and the claim was therefore barred by the statute of limitations. The district court agreed and dismissed the claim. The plaintiff proceeded to trial against the car's owner, who defended on grounds that he had not been driving. The jury found against the plaintiff, who then appealed to the superior court, arguing that the district court erred when it dismissed her claim against the second man. The superior court affirmed the district court's decision.

We granted review. We conclude that the plaintiff's amended complaint met the requirements for relation back under Rule 15(c), and we therefore reverse the superior court's decision.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Linda Sellers's car was rear-ended by a Dodge Durango on January 4, 2010. The Durango carried at least three men, including the owner, Stephan Kurdilla, and Daniel Stroud. Sellers later attested by affidavit that the Durango's driver approached her vehicle, identified himself as Stephan Kurdilla, and gave her an insurance identification card with Kurdilla's name on it. She attested that she copied down the information from the card. Her passenger, Bonnie Largen, affirmed in her affidavit that she saw the Durango's driver hand Sellers an insurance identification card, heard Sellers identify the driver as Kurdilla, and saw her copy down the information from the card. The police did not respond to the scene of the accident but instead had Sellers file a crash report, in which she identified Kurdilla as the Durango's driver.

On January 11, 2010, State Farm mailed a claim acknowledgment notice which identified "Our Insured" as Daniel Stroud. But in its seven subsequent letters spanning January to July, State Farm identified "Our Insured" as Stephan Kurdilla.

In June 2010, attorney Michael Stepovich notified State Farm that he represented Sellers "in regard to injuries she sustained in a rear-ending by your insured"; in his letter he named Kurdilla as "Your Insured." State Farm replied on July 30, this time identifying "Our Insured" as Stroud. Its next two letters identified Kurdilla as its insured; its next two named Stroud; and the two after that again named Kurdilla. All in all, State Farm identified Kurdilla as its insured eleven times and Stroud four times in its correspondence with Stepovich.

## B.    Proceedings

On January 4, 2012, the last day before the statute of limitations expired, Sellers filed a complaint naming Kurdilla as the defendant and alleging that he had been driving the Durango at the time of the accident.[1] Sellers had difficulty locating Kurdilla for service of process, and State Farm declined to accept service on his behalf. On April 6, 2012, Sellers filed an affidavit of due diligence and a motion for leave to serve Kurdilla by publication, which the court granted on April 16. Sellers published the required notice four times in May and sent a certified copy to Fort Wainwright, where Kurdilla had been stationed. Eventually Kurdilla was served at Fort Bragg, North Carolina, on May 11, 2012.

Michael Kramer, the attorney State Farm retained to represent Kurdilla, later attested by affidavit that Kurdilla called him on May 16, 2012, and told him that Stroud was the driver and that he (Kurdilla) had called Stepovich earlier that day with

---

[1]    *See* AS 09.10.070 (providing that actions for tort and personal injury must be brought within two years).

Stroud's contact information. Stepovich, however, disputes having received such a call from Kurdilla; he contends that it was not until a few months later, when Kurdilla filed a motion to dismiss the case, that Sellers first had notice that Stroud claimed to be the driver.

Kramer filed his entry of appearance on Kurdilla's behalf on June 1. On August 16 Kurdilla filed a motion to dismiss supported by a two-line affidavit from Stroud asserting that he, Stroud, had been driving at the time of the accident. Sellers opposed the motion to dismiss and filed an amended complaint that added "and/or Daniel Stroud" to the allegations of driver negligence. Sellers also moved for a continuance pursuant to Alaska Civil Rule 56(f) so that she could investigate whether Stroud was indeed the driver and whether he and Kurdilla had colluded to hide the driver's identity.

Stroud, also represented by Kramer, then filed a motion to dismiss the new claim against him on the grounds that Kurdilla's phone call to Stepovich, together with State Farm's letters, had put Sellers on early notice that Stroud was actually the driver and that the statute of limitations on a claim against him had now expired. Stroud also directly disputed Sellers's description of the relevant events by attesting in a supporting affidavit that at the time of the collision both he and Kurdilla approached Sellers's car, that Kurdilla "gave her his insurance card and clearly identified himself as the owner of the vehicle, and [that] [Stroud] clearly identified [him]self as the driver of the vehicle."

### 1. District court proceedings

The district court denied Kurdilla's motion to dismiss, finding that there was a question of material fact as to whether he had been driving the Durango. But the court granted Stroud's motion to dismiss the claim against him, finding that State Farm's first letter to Sellers in January 2010 — one of the four that identified Stroud as the company's insured — should "have put [Sellers] on notice of a duty to investigate as to

a possible second driver, and that would be sufficient for the statute of limitations argument that's being made in [this] case." The court also denied Sellers's Rule 56(f) motion seeking a continuance to conduct more discovery.

The claim against Kurdilla proceeded to trial. Kurdilla presented testimony — his own, Stroud's, and that of another passenger in the car — that Stroud, not he, was driving at the time of the accident, and the jury returned a defense verdict. Sellers appealed to the superior court, arguing that the district court erred by dismissing her claim against Stroud and by denying her motion for a Rule 56(f) continuance.

### 2. Superior court appeal

On appeal, the superior court analyzed Rule 15 and concluded that there was no identity of interest between Kurdilla and Stroud that would allow Kurdilla's knowledge of the lawsuit to extend Sellers's time for bringing a claim against Stroud. The court noted that "Stroud and State Farm presumably have an identity of interest," but it concluded that Sellers had abandoned any argument based on that relationship. The superior court also observed that Kurdilla had been served more than 120 days after Sellers filed her complaint and that the trial court had not found good cause for a lack of timely service, meaning that Sellers could not meet another requirement of Rule 15(c) — notice of the lawsuit within the time allowed for service. The superior court affirmed "[t]he district court's decisions regarding the relation back and identity of interests doctrines."

The superior court declined to resolve another of Sellers's arguments — that the Servicemembers Civil Relief Act tolled the statute of limitations with respect to Stroud while Kurdilla, a member of the armed services, was deployed overseas — because the argument was raised for the first time on appeal. But the superior court did reverse and remand the district court's denial of Sellers's Rule 56(f) motion, noting that

Sellers had not been dilatory in her discovery efforts and that there were adequate reasons to give her more time. Finally, the superior court reversed the district court's dismissal of Stroud from the case and remanded to the district court to determine whether there was a viable claim for fraud against the two men and, if so, when it had accrued.

### 3. Supreme court petition

Sellers filed a petition asking us to review the district and superior courts' holdings on the issues of identity of interest and relation back under Civil Rule 15(c). We granted the petition. Sellers argues: (1) that she made a mistake, not a deliberate tactical choice, when she identified Kurdilla as the defendant driver, and Rule 15(c) allows relation back in the event of a mistake; (2) that the service period Rule 15(c) refers to in which a potential defendant must receive notice of the litigation was extended beyond 120 days by the district court's order allowing service by publication; (3) that the Servicemembers Civil Relief Act tolled the statute of limitations on her claim against Stroud; and (4) that Stroud shares an identity of interest with State Farm, Kramer, and Kurdilla which means that any notice of the litigation to those parties may be imputed to him.

## III. STANDARDS OF REVIEW

"We exercise our 'independent judgment when interpreting the Alaska Rules of Civil Procedure.' "[2]

As for the applicable standard of review for decisions whether amendments relate back under Alaska Civil Rule 15(c), Stroud notes that we review "a trial court's

---

[2] *Coleman v. McCullough*, 290 P.3d 413, 414 (Alaska 2012) (quoting *Joseph v. State*, 26 P.3d 459, 463 (Alaska 2001)).

denial of a motion to amend a complaint under an abuse of discretion standard."[3]  This describes the standard of review for Rule 15(a), which gives trial courts discretion, while Rule 15(c) does not.[4]

In *Phillips v. Gieringer* the trial court permitted an amendment under Rule 15(a) but denied relation back under Rule 15(c).[5]  We did not articulate a standard of review for applications of Rule 15(c), but we reviewed the issue de novo.[6]  We now hold that we review de novo whether an amendment satisfies Rule 15(c)'s requirements for relation back.[7]

We review factual findings for clear error.[8]

---

[3]     *Siemion v. Rumfelt*, 825 P.2d 896, 898 n.2 (Alaska 1992) (first citing *Shooshanian v. Wagner*, 672 P.2d 455, 458 (Alaska 1983); and then citing *Estate of Thompson v. Mercedes-Benz, Inc.*, 514 P.2d 1269, 1271 (Alaska 1973)).

[4]     *Compare* Alaska Civil Rule 15(a) ("Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party . . . ."), *with* Alaska Civil Rule 15(c) ("An amendment changing the party against whom a claim is asserted relates back if . . . ").  *Cf. Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553 (2010) (distinguishing Federal Civil Rule 15(a) and holding that Federal Civil Rule 15(c) "mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion").

[5]     108 P.3d 889, 891-92 (Alaska 2005).

[6]     *Id.* at 893; *see id.* at 893-96.

[7]     *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1194 (9th Cir. 2014) ("Likewise, we review the district court's application of the relation-back doctrine under Federal Rule of Civil Procedure 15(c) de novo."); *Williams v. Boeing Co.*, 517 F.3d 1120, 1132 n.8 (9th Cir. 2008) (distinguishing between standards of review for denial of a motion to amend and denial of relation back once leave to amend is granted).

[8]     *Hallam v. Alaska Airlines, Inc.*, 91 P.3d 279, 283 (Alaska 2004).

## IV.    DISCUSSION

The full text of Alaska Civil Rule 15(c) is important to the discussion that follows.  It states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.  An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by Rule 4(j) for service of the summons and complaint, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

In this opinion we must decide whether the rule (1) permits the relation back of an amendment that adds — rather than merely substitutes — a defendant; (2) allows a plaintiff with a mistaken belief about the defendant's identity to amend her complaint regardless of whether she was on "inquiry notice" that her initial choice of whom to sue might be mistaken; (3) allows the period provided "for service of the summons and complaint" to be expanded by an order allowing service by publication; and (4) allows "notice of the institution of the action" to be imputed from an insurer to a permissive driver who is an insured by definition.  We also address whether our interpretation of the rule comports with due process.

### A.    Alaska Civil Rule 15(c) Permits Relation Back Of An Amendment Adding A Defendant.

The second sentence of Civil Rule 15(c) provides that "[a]n amendment *changing the party against whom a claim is asserted* relates back" under stated conditions.  (Emphasis added.)  Stroud argues that Sellers cannot take advantage of this

provision because she did not seek to "change" a party when she revised her complaint to name "Steph[a]n Kurdilla and/or Daniel Stroud" as the defendants; he argues that "change" can mean only "substitute," not "add." Stroud argues that the provision is intended only as a "name-correcting device" and cannot be used to add a new party once the statute of limitations has run.[9]

The focus of our past decisions regarding whether an amendment relates back under Rule 15(c) has been notice and mistake, not whether the plaintiff sought to add or substitute a defendant.[10] But regardless of context, we liberally construe the rules of pleading "to [e]nsure that no plaintiff is deprived of his day in court solely because of the intricacies and technical limitations of pleading."[11] We now hold that "changing the

---

[9] Sellers argues that Stroud waived this argument by failing to raise it below. "We will not consider new arguments not raised in the trial court, unless the issues establish plain error, or the issues (1) do not depend on new facts, (2) are closely related to other arguments at trial, and (3) could have been gleaned from the pleadings." *State Farm Auto. Ins. Co. v. Raymer*, 977 P.2d 706, 711 (Alaska 1999). Since this question requires only interpretation of the court rules, since the parties have fully briefed the issue, and since Rule 15(c) was consistently litigated below, we will resolve it.

[10] *See McCracken v. Davis*, 560 P.2d 771, 777 (Alaska 1977) (denying relation back because defendant was not on notice and reserving whether Rule 15(c) permits adding defendants); *see also Siemion v. Rumfelt*, 825 P.2d 896, 901 (Alaska 1992) (holding plaintiff did not make a mistake); *McCutcheon v. State*, 746 P.2d 461, 469 (Alaska 1987) (holding complaint was barred by statute of limitations); *Atkins v. DeHavilland Aircraft Co. of Canada, Ltd.*, 699 P.2d 352, 354 (Alaska 1985) (holding plaintiff made a tactical decision, not a mistake), *distinguished on other grounds by Farmer v. State*, 788 P.2d 43 (Alaska 1990); *Adkins v. Nabors Alaska Drilling, Inc.*, 609 P.2d 15, 21 (Alaska 1980) (holding defendant was aware of accident but not of lawsuit), *distinguished on other grounds by Farmer*, 788 P.2d at 48-49.

[11] *Farmer*, 788 P.2d at 47.

party against whom a claim is asserted" for purposes of relation back under Rule 15(c) includes both "adding" and "substituting" defendants.

An important purpose of Rule 15(c) is to ensure that a new party has fair notice of a cause of action within the time provided by the statute of limitations, "such that the party's rights will not be prejudiced."[12] The rule balances the party's interest in the protection of the statute of limitations against the idea that a party who was timely notified of litigation "is entitled to no more protection from [the] statutes of limitations than" a party who was timely served.[13] The additional requirement that the plaintiff have made a genuine mistake about the proper party's identity prevents use of the relation-back doctrine for tactical advantage or to circumvent the rules governing joinder.[14]

Requiring a plaintiff to "substitute" rather than "add" a defendant gives the new party no additional protections;[15] it conceivably only benefits the timely-served defendant, who under Stroud's interpretation must be dismissed in order for a new defendant to be named. But Rule 15(c) is not intended to benefit an already-identified defendant who was timely served. And limiting the rule to substitution could — as in

---

[12]     *Id.*

[13]     *Id.* (quoting 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 15:15[2], at 15-144 to 15-145 (2d ed. 1985)); Alaska R. Civ. P. 15(c) (requiring that the party "receive[] such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits").

[14]     *See Atkins*, 699 P.2d at 354; *McCracken*, 560 P.2d at 777.

[15]     *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 469 (4th Cir. 2007) (noting that the Federal Civil Rule 15(c) protections come from its requirements of notice and mistake, "not from reading the term 'changes' narrowly"). Federal Civil Rule 15(c) and Alaska Civil Rule 15(c) are very similar and "we may look to federal case law interpreting this rule for guidance in our own application." *Farmer*, 788 P.2d at 47.

this case — harm the plaintiff who made an honest mistake. Professors Wright and Miller write that "there is no justification for a restrictive interpretation of the word 'changing' that would require a plaintiff to choose among defendants. Too narrow a reading of the rule might result in the release of a party who ultimately might have proven to be liable . . . ."[16] Here, Stroud's assertion that he was the driver directly contradicted Sellers's evidence that it was Kurdilla. Sellers could not safely substitute one name for the other in the face of the conflicting evidence. Pending further discovery, her only immediate option was to name both men, as she did in her amended complaint, alleging that *either* Kurdilla *or* Stroud was liable as the driver.[17]

Considering the policies underlying Rule 15(c), we conclude that adding a defendant is "changing the party against whom a claim is asserted" and that Sellers's claim against Stroud satisfied this aspect of the rule.

**B.   A Plaintiff On "Inquiry Notice" May Still Make A True Mistake About The Identity Of The Proper Party.**

The district court dismissed Sellers's claim against Stroud as time-barred after finding that the letters in which State Farm identified Stroud as "Our Insured" "would have put [Sellers] on notice of a duty to investigate as to a possible second driver." The superior court did not address the issue of mistake, resolving Sellers's appeal on notice grounds instead; but Stroud argues in his response to Sellers's petition

---

[16]    6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1498.2 (3d ed. 2010).

[17]    *Cf. Meredith v. United Air Lines*, 41 F.R.D. 34, 39 (S.D. Cal. 1966) (noting that where "Plaintiff's counsel could not safely substitute" defendants because either party might be liable, "[i]t would be unfair indeed to deny Plaintiff the benefits of Rule 15(c)").

for review that Sellers made a conscious choice to sue only Kurdilla and that the district court's finding of inquiry notice supports this conclusion. We disagree.

We have interpreted Rule 15(c)(2) to require that "the party seeking to amend must have made a true mistake concerning the identity or name of the proper party."[18] Under this interpretation, a complaint's identification of the right actor by the wrong name constitutes a mistake,[19] but a plaintiff's "tactical decision, for instance, to omit a possible defendant," does not.[20] We have not addressed how a plaintiff's confusion about the roles of two potential defendants fits within the rule.

We have held that there was no "true mistake" for purposes of Rule 15(c) when a plaintiff knew of someone's identity and role in a possible cause of action but deliberately chose to omit that person from the complaint. In *Siemion v. Rumfelt*, a minor driving his father's car ran into the plaintiffs' vehicle.[21] The plaintiffs sued the father but in their complaint correctly identified the son as the driver.[22] The superior court denied the plaintiffs' later motion to add claims against the son and mother.[23] We affirmed, noting that "[i]t appears that the Siemions neglected to add [the son and mother] as

---

[18]    *Atkins*, 699 P.2d at 354; *see also Siemion v. Rumfelt*, 825 P.2d 896, 901 (Alaska 1992) (noting that plaintiffs must "demonstrate that they were mistaken as to the identity of the proper parties" to qualify for Rule 15(c)).

[19]    *Phillips v. Gieringer*, 108 P.3d 889, 891 (Alaska 2005).

[20]    *Atkins*, 699 P.2d at 354.

[21]    825 P.2d at 897.

[22]    *Id.* at 897, 901.

[23]    *Id.* at 897.

defendants although knowing their respective identities" and that the plaintiffs "offered no evidence that they made a mistake regarding the [new parties'] identities."[24]

In contrast to the plaintiffs' deliberate choices about whom to sue in *Siemion*, the U.S. Supreme Court has noted that a plaintiff "might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events" and "mistakenly choose to sue a different defendant based on that misimpression."[25] The Supreme Court held that such a "deliberate but mistaken choice" would not necessarily disqualify a plaintiff from satisfying Federal Civil Rule 15(c)'s requirement that the plaintiff have made a "mistake."[26] The First Circuit reached a similar conclusion when it held that Federal Civil Rule 15(c) "does not distinguish among types of mistake concerning identity" and overturned a district court's determination that there was no mistake when a plaintiff "through the exercise of reasonable diligence[] could have known[] the identity of the proper defendant."[27]

The district court in this case found only that Sellers was "on notice of a duty to investigate as to a possible second driver,"[28] not that Sellers knew Stroud was the

---

[24] *Id.* at 901; *see also Atkins*, 699 P.2d at 354 (denying relation back because "Atkins offered no evidence that he made a mistake concerning DeHavilland's identity").

[25] *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010).

[26] *Id.*

[27] *Leonard v. Parry*, 219 F.3d 25, 28-29 (1st Cir. 2000).

[28] Since the district court relied only on the State Farm letters in its finding that Sellers was on inquiry notice, it did not resolve any factual questions regarding the phone call Kurdilla said he made on May 16, 2012 identifying Stroud as the driver. Stroud now argues that this phone call and his two affidavits are also evidence that Sellers was on notice that he was the driver.

(continued...)

driver and named Kurdilla regardless. There was no finding that Sellers was not "mistaken as to the identity of the proper parties,"[29] as she claimed to be. A plaintiff on inquiry notice can make a mistake; indeed, it is the nature of mistake that a party has missed a chance to discover the truth.[30] "The reasonableness of the mistake is not itself at issue."[31] Alaska Civil Rule 15(c) protects against a plaintiff who has *not* made a mistake, who knows the defendant's identity and understands the defendant's role in the

---

[28](...continued)
        But the mistake inquiry under Rule 15(c) asks whether the plaintiff made a mistake when she filed the original complaint. *See, e.g.*, *id.* at 29 ("[K]nowledge acquired by a plaintiff after filing his original complaint is without weight in determining his state of mind at the time he filed the initial complaint and, thus, in determining whether a mistake concerning identity occurred."). Sellers filed her initial complaint on January 4, 2012; the phone call Kurdilla alleged to have made later and Stroud's affidavits filed later are irrelevant for Rule 15(c) purposes.

    [29]    *Siemion*, 825 P.2d at 901.

    [30]    *See Leonard*, 219 F.3d at 29 ("Virtually by definition, every mistake involves an element of negligence, carelessness, or fault . . . .").

    [31]    *Krupski*, 560 U.S. at 549; *see also id.* at 550-51 (noting that Federal Civil Rule 15(c) arose out of recurring problems with timely Social Security suits that named the wrong defendant, even though "litigants knew or reasonably should have known" the proper party's identity from paperwork and the filing statute's requirements); *Leonard*, 219 P.2d at 29 (noting that the language of Rule 15(c) "does not distinguish among types of mistakes concerning identity").

events at issue.[32]  But if the plaintiff has made a true mistake about the defendant's identity, Rule 15(c)'s mistake requirement is satisfied.

In this case, Sellers sued Kurdilla because she believed he was the driver. She named him as the driver in the crash report and in her complaint.  The district court's finding that Sellers was on notice to inquire into whether Stroud was the driver instead does not change the fact that she premised her complaint on a mistake about the driver's identity.  Because Sellers made a "mistake concerning the identity of the proper party," we must resolve whether Rule 15(c)'s other requirements are satisfied.

## C.     State Farm Knew Of The Litigation Within The Rule 15(c) Notice Period.

Rule 15(c) requires that the notice and mistake elements be satisfied "within the period provided by Rule 4(j) for service of the summons and complaint."  Rule 4(j), in turn, provides a 120-day time limit for service; if service has not been completed within that time, the clerk is required to "send notice to the plaintiff to show good cause in writing why service . . . is not complete."  "If the court finds good cause why service has not been made, the court shall establish a new deadline by which plaintiff must file proof of service or proof that plaintiff has made diligent efforts to serve."[33]

The district court in this case did not decide whether Stroud had imputed notice of Sellers's lawsuit within the time allowed by Rule 4(j).  The superior court did

---

[32]     *See Siemion*, 825 P.2d at 901; *Farmer v. State*, 788 P.2d 43, 49 (Alaska 1990) (distinguishing a case in which a plaintiff who "*knew* the defendant's identity, but merely neglected to add that defendant to his original complaint," made no mistake (emphasis in original) (citing *McCutcheon v. State*, 746 P.2d 461 (Alaska 1987))); *Atkins v. DeHavilland Aircraft Co. of Canada, Ltd.*, 699 P.2d 352, 354 (Alaska 1985) (finding no mistake where a plaintiff made "[a] tactical decision . . . to omit a possible defendant").

[33]     Alaska Civil Rule 4(j).

address the issue, holding that the period for service of the summons and complaint was 120 days because "[t]he trial court in this case did not find good cause" to extend the Rule 4(j) period; the court further held that since Kurdilla was served more than 120 days after Sellers filed her complaint, the necessary prerequisites to relation back under Rule 15(c) did not occur within the Rule 4(j) service period and notice could not be imputed to Stroud. Sellers now argues that the superior court erred in enforcing a 120-day limit because the Rule 4(j) period may be extended and was in this case.[34] Stroud counters that in *West v. Buchanan*[35] we established a bright-line 120-day rule for notice under Rule 15(c).

As explained below, we conclude that Stroud had imputed notice of the litigation well within 120 days of the filing of the complaint; nonetheless, we first explain why we disagree with the superior court's calculation of the applicable period for service. Contrary to Stroud's argument on appeal, *West* no longer defines the notice period for purposes of Rule 15(c). The rule was amended in 2005, after *West* was decided, to provide for notice "within the period provided by Rule 4(j) for service of the summons and complaint."[36] As noted above, Rule 4(j) establishes a 120-day deadline

---

[34]    Sellers also argues that the Servicemembers Civil Relief Act tolled the statute of limitations while Kurdilla was deployed, an argument she raised for the first time on appeal to the superior court. The superior court held that Sellers waived this argument when she failed to raise the issue in district court. We find it unnecessary to address it.

[35]    981 P.2d 1065 (Alaska 1999).

[36]    Alaska Supreme Court Order No. 1571 (Apr. 21, 2005). When *West* was decided in 1999, Rule 15(c) provided for notice "within the period provided by law for commencing the action." *West*, 981 P.2d at 1069. We note, however, that we ultimately held in *West* that notice must take place within "the reasonable time for service of process"; we did not require that extensions beyond the standard 120-day service period

(continued...)

for service but allows the court to "establish a new deadline" if it "finds good cause why service has not been made." The 2005 amendment to Rule 15(c) uses the same language as its federal counterpart, which allows extensions of the 120-day notice period if the court so orders.[37] Thus, Rule 15(c) contemplates notice within 120 days *or* a longer period of time if ordered by the court.

It is true, as the superior court observed, that the district court in this case did not make an explicit good cause finding in support of a new deadline under Rule 4(j). The district court did, however, authorize an extension of the service period. By authorizing service by publication, the district court required Sellers to publish notice "four times during four consecutive calendar weeks, once in each week."[38] On April 16, the date of the court's order, less than four weeks remained in the original service period; the effect of the court's order was to extend that period until service by publication was

---

[36](...continued)
be excluded. *Id.*

[37]     Fed. R. Civ. P. 15(c); *see* Fed. R. Civ. P. 15 advisory committee's note to 1991 amendment ("In allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the 120 days specified in that rule, *but also any additional time resulting from any extension ordered by the court pursuant to that rule . . . .*" (emphasis added)); *see also Heiser v. Ass'n of Apartment Owners of Polo Beach Club*, 848 F. Supp. 1482, 1488 (D. Haw. 1993) (holding that amendment adding new parties related back because a court-granted extension constituted "good cause for the failure to serve within 120 days" and the parties were thus served "prior to the end of the Rule 4(j) period for serving the original complaint").

[38]     Alaska R. Civ. P. 4(e)(2) (2012). Alaska Civil Rule 4(e)(2) was altered and renumbered as 4(e)(3) in 2014, although its substantive requirements for service by publication in a newspaper remain the same. Alaska Supreme Court Order No. 1834 (July 9, 2014).

complete.[39] We necessarily infer that the district court had good cause to issue its order.[40]

This reading is consistent with *West*, in which we concluded that Rule 15(c)'s goal was "to liberalize the rules of pleading" to allow amendments otherwise barred by the statute of limitations as long as defendants were protected against the prosecution of stale claims.[41] In *West* we concluded that it would be "little more than senseless formalism" to say that the original defendant "received timely and adequate notice" but the new defendant did not when both received notice within the period allowed for service of process.[42] It would be equally formalistic to bar Sellers's amendment on timeliness grounds because the district court did not explicitly reference Rule 4(j) in its order granting Sellers permission under Rule 4(e) to publish after the original 120-day service deadline had passed. The effect of the district court's order was to extend the Rule 15(c) notice period through the final publication of service on May 22, 2012. The evidence is undisputed that Kurdilla was served with Sellers's complaint, naming him as the driver, on May 11 and that he advised Kramer, his State Farm-

---

[39]     Sellers filed her complaint on January 4, 2012, and the usual 120-day service period would have expired on May 3. Sellers promptly published the required notice on May 1, 8, 15, and 22.

[40]     The court's authorization of "other service" under Rule 4(e) is premised on proof "that after diligent inquiry a party cannot be served with process" by more usual means.

[41]     *West*, 981 P.2d at 1068; *see also Phillips v. Gieringer*, 108 P.3d 889, 893 (Alaska 2005) (noting that whether the original pleading gave fair notice to the actual defendant within the statutory period is the linchpin of the relation back doctrine); *Farmer v. State*, 788 P.2d 43, 50 (Alaska 1990) ("Civil Rule 15(c) should not stand as a technical bar. To construe it so is to put form over substance . . . .").

[42]     981 P.2d at 1071.

appointed attorney, on May 16 that the complaint was mistaken because Stroud had been the driver. These events occurred within the time allowed by Rule 4(j) for service.

In any event, we conclude that service of process on Kurdilla is not determinative in this case because State Farm, which insured both him and Stroud, had notice of the suit and of Sellers's alleged mistake much earlier. Kramer's affidavit of April 23, 2013, filed in support of a motion for costs related to a motion to compel, asserted that he had "been lead attorney in [this case] since its inception [on] January 4, 2012." An invoice Kramer's law firm sent State Farm, filed after trial in support of a motion for attorney's fees, reflected that on January 26, 2012, one of the firm's attorneys received a phone call from a State Farm representative, researched court records, and reviewed Sellers's complaint; the next day Kramer also reviewed the complaint, researched "statute of limitations issues" regarding "[redacted]," and spoke to the State Farm representative assigned to Sellers's insurance claim. The records show that over the next few weeks Kramer received State Farm's claim file and prepared to defend the claim. This evidence is more than sufficient for us to conclude that State Farm had notice of Sellers's suit and her alleged mistake within the time allowed for service on Kurdilla.

### D. Notice Of The Litigation Is Fairly Imputed From State Farm To Stroud Because Of Their Identity Of Interest.

We next address whether State Farm's timely notice of the litigation may be fairly imputed to Stroud. For deciding whether amendments relate back under Rule 15(c) we have adopted the "identity of interest" doctrine, which imputes notice of litigation to a new defendant through timely notice to an original party.[43] We held in *Farmer v. State* that "[w]here a new party (1) has constructive notice, imputed through

---

[43]    *Phillips*, 108 P.3d at 894-95.

the same attorney retained by existing parties to the action, (2) through no fault of the plaintiff the defendant's true identity was unknown at the time of pleading, and (3) the new party defendant is not prejudiced by the amended complaint, Civil Rule 15(c) should not stand as a technical bar."[44]

In *Phillips v. Gieringer* the plaintiff was involved in a car accident with a driver who was insured under his father's State Farm policy.[45] The plaintiff mistakenly sued the father "but described the 'defendant' in her complaint as the driver of the motor vehicle and directed all her claims against the driver."[46] We noted that "a 'business operation' or other private relationship may also give rise to an identity of interest" and reaffirmed that the doctrine's primary objective was to avoid prejudice to the new party.[47] We then determined that State Farm, because of service on the father, had notice of the litigation and shared an identity of interest with the driver.[48] We imputed notice of the suit to the driver through State Farm because "[i]n routine cases, there will be an identity of interest between the insurer and the insured because insurance companies are typically required by contract to represent the interests of the insured."[49] But we allowed that the

---

[44]    788 P.2d at 49-50.

[45]    108 P.3d at 891.

[46]    *Id.*

[47]    *Id.* at 894.

[48]    *Id.* at 895.

[49]    *Id.*

-20-                                    **7116**

presumption of notice "may be rebutted if the insured can show that its interests conflict with the insurance company."[50]

Sellers argues that the issue of imputed notice in her case is governed by *Phillips* because in both cases the original defendant and the actual driver were represented by the same insurance company.[51] Stroud counters that *Phillips* addresses co-insureds, not permissive drivers who are insured by definition, and besides that his interests were adverse to those of both Kurdilla and State Farm. Stroud also relies on the superior court's finding that Sellers abandoned on appeal the issue of whether Stroud and State Farm shared an identity of interest.

### 1. Sellers did not abandon her claim that Stroud and State Farm share an identity of interest.

The superior court noted in Sellers's appeal that an identity of interest presumably existed between Stroud and State Farm, but that "[o]n appeal, Sellers abandoned her argument" and "focused entirely on an identity of interest between Stroud and Kurdilla." We review de novo whether a party has waived a claim on appeal.[52] We conclude that Sellers did not waive this issue.

Sellers's brief on appeal in the superior court argued that her case was "factually analogous" to *Phillips*. She explained that *Phillips* held that notice could be imputed to the driver "because both parties were represented by the same counsel and covered by the same insurance carrier." She then argued that notice could be imputed in her case because "both Kurdilla and Stroud were covered by State Farm" and were

---

[50] *Id.*

[51] *See id.* at 891 ("Although Carl [Gieringer] was not a minor, he was insured under the same State Farm auto insurance policy as his father . . . .").

[52] *State v. Jacob*, 214 P.3d 353, 361 (Alaska 2009) (citing *Lauth v. State*, 12 P.3d 181, 184 (Alaska 2000)).

represented by the same attorney. We acknowledge that Sellers could have clarified her argument by stating that notice was imputed *through State Farm*, but we believe she adequately briefed her claim by identifying the relevant holding in *Phillips* and the corresponding circumstances in her own case. Our conclusion is bolstered by Stroud's response to Sellers's brief, in which he argued that "State Farm never had an identity of interest with Stroud such that notice of the suit against Kurdilla to State Farm should be imputed to Stroud."

### 2. Stroud and State Farm share an identity of interest.

Sellers's circumstances are very close to those in *Phillips*. Her complaint described the defendant as the driver but named the car owner; both the owner and the driver were covered by the same insurance policy; and the trial court granted leave to amend the complaint and add the driver but refused to allow the amendment to relate back. The only salient difference between the cases is that Stroud was a permissive driver under Kurdilla's insurance policy rather than a named insured. Stroud contends that "the only relationship between State Farm and Stroud is a contractual obligation to Kurdilla to defend any permissive driver" and that this difference from *Phillips* is determinative.

Stroud understates State Farm's obligation to him. Under AS 28.20.440(b)(2), motor vehicle liability insurance must "insure the person named and every other person using the vehicle with the express or implied permission of the named insured." Unnamed but permissive drivers "qualify as additional insureds when involved in an accident" and are entitled to "coverage . . . against the claims of [an] injured party as if the permissive user was the named insured."[53] Absent unusual circumstances not

---

[53] 8 STEVEN PLITT ET AL., COUCH ON INSURANCE § 111:14 (3d ed. 2015).

-22- **7116**

evident in this record, State Farm owed Stroud the same duties of defense and indemnity it owed Kurdilla, its named insured.

Stroud argues that imputing notice to a permissive driver is unfair because the insurance company does not have the same "contact information and an ongoing business relationship" with "a random driver," making it less likely that the insurer's actual notice will reach the insured. That consideration does not affect this case, where State Farm identified Stroud as "Our Insured" on January 11, 2010 — within days of the accident — and where the attorney State Farm hired spoke to Stroud by phone within the Rule 15(c) notice period.[54]

Stroud next argues that we should not impute notice of the litigation to him through State Farm because his interests were adverse to the insurer's.[55] According to Stroud, State Farm's primary obligation was to represent "its paying customer, Kurdilla." Stroud contends that State Farm "had no duty to defend Stroud until after Sellers attempted to name him as a defendant" and that he "was not being defended by State Farm" during the statute of limitations or service periods.

Stroud cites no authority in support of these arguments. As already noted, an auto insurer is required by statute to "insure the person named [in the policy] and every other person using the vehicle."[56] A "paying customer" is not entitled to preferential treatment: An insurer owes all its insureds a duty of good faith and fair

---

[54] The attorney's billing records reflect "Phone call with driver, Daniel Str[o]ud, regarding [redacted]" on May 18, 2012, following a phone call with Kurdilla.

[55] *See Phillips*, 108 P.3d at 895 (holding that the presumption of notice "may be rebutted if the insured can show that its interests conflict with the insurance company").

[56] AS 28.20.440(b)(2).

dealing, and it cannot defend one at the expense of another.[57] Potential conflicts between insureds are routinely handled by the assignment of different adjusters and different defense counsel.[58] And the insurer's obligation begins before the insured is named as a defendant in a lawsuit and even if suit is never filed. The insurer is required to promptly investigate insurance claims and offer equitable settlements when liability is reasonably clear.[59] These duties, beginning when the insurer first received notice of the claim, were the same whether Kurdilla or Stroud was the driver.[60]

In short, Stroud has not shown that his interests were adverse to those of State Farm, nor has he rebutted the presumption from *Phillips* that he and his insurer share an identity of interest. State Farm's actual notice of the litigation in January 2012 is therefore imputed to Stroud.[61]

---

[57] *See Williams v. GEICO Cas. Co.*, 301 P.3d 1220, 1226 (Alaska 2013).

[58] *See, e.g.*, *Fed. Ins. Co. v. MBL, Inc.*, 160 Cal. Rptr. 3d 910, 923-24 (Cal. App. 2013) (rejecting insured's claim that it was entitled to independent counsel where insurer represented multiple defendants, noting that insurer "retained different law firms to defend MBL and the other insured as well as assigned different claims adjusters" who "had no access to each others' files, did not discuss the claims and there is no evidence that the defense of either insured would have been affected in any way"); *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 187-88 (Ky. App. 2003) (noting that it would "have been the better practice for [insurer] to employ two separate adjusters" as representatives testified "was the company's normal practice" in cases involving multiple insureds, but under the circumstances finding no actual prejudice in the insurer's use of a single adjuster).

[59] AS 21.36.125(a)(3), (6).

[60] *See* AS 28.20.440(b)(2).

[61] Since we conclude that State Farm and Stroud share an identity of interest, we do not resolve Sellers's arguments that an identity of interest exists between Stroud and Kramer and between Stroud and Kurdilla.

### E.    Imputing Notice To Stroud Does Not Violate Due Process.

Finally, Stroud argues that imputing notice to him through State Farm violates due process under the federal and Alaska constitutions.

It is true that the failure to provide a new party with adequate, timely notice of litigation "might raise a question of procedural due process."[62]  However, the U.S. Supreme Court has observed in reference to Federal Civil Rule 15(c) that "[t]he Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees. . . . [A]s long as no undue prejudice is shown, 'due process requirements are met if the requirements of Rule 15 are met.' "[63]

Procedural due process under Alaska's constitution " 'requires notice and opportunity for hearing appropriate to the nature of the case.'  Parties must have notice of the subject of proceedings that concern them 'so that they will have a reasonable opportunity to be heard.' "[64]  Alaska Civil Rule 15(c) adopts the same notice and mistake requirements as Federal Civil Rule 15(c), and both rules define the period for notice as equal to the period for service of the complaint.  As in federal law, we conclude that,

---

[62]    WRIGHT & MILLER, *supra* note 16, at § 1498.

[63]    *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465 (2000) (quoting *Ohio Cellular Prods. Corp. v. Adams USA, Inc.*, 175 F.3d 1343, 1349 n.5 (Fed. Cir. 1999), *rev'd on other grounds by Nelson*, 529 U.S. 460).  Professors Wright and Miller argue that the language of Federal Civil Rule 15(c) protects against the procedural due process violation Stroud claims by requiring that the new defendant receive such notice that it "will not be prejudiced in defending on the merits" and know that it would have been named "but for a mistake concerning the proper party's identity." WRIGHT & MILLER, *supra* note 62 (quoting Fed. R. Civ. P. 15(c)(1)(C)).

[64]    *Price v. Eastham*, 75 P.3d 1051, 1056 (Alaska 2003) (first quoting *Walker v. Walker*, 960 P.2d 620, 622 (Alaska 1998); and then quoting *Potter v. Potter*, 55 P.3d 726, 728 (Alaska 2002)).

unless undue prejudice is shown, due process is satisfied if the requirements of Alaska Civil Rule 15(c) are met.[65]

The only prejudice Stroud alleges is that more than two and a half years passed between the accident and Sellers's amendment adding him as a defendant. But we have already concluded that having received the same notice as Kurdilla, who was timely served, Stroud had fair notice of the litigation such that his rights will not be prejudiced. We therefore conclude that due process is satisfied.

## V.    CONCLUSION

Sellers's amended complaint relates back to the date she filed her original complaint. Accordingly, we REVERSE the dismissal of Sellers's claim against Stroud and REMAND to the superior court with instructions to remand to the district court for further proceedings.[66]

---

[65]    *See Farmer v. State*, 788 P.2d 43, 47 (Alaska 1990) (holding that "the touchstone of the relation back doctrine is fairness" and a new party must have "fair notice of the cause of action, within the prescribed statutory period, such that the party's rights will not be prejudiced").

[66]    This holding does not affect the superior court's reversal and remand of the district court's Rule 56(f) ruling.